GRAINES, TRUSTEE, APPELLEE AND CROSS-APPELLANT, *v.* FLEETER ET AL.; NORTHEAST OHIO REGIONAL SEWER DISTRICT, APPELLANT AND CROSS-APPELLEE. ■

(No. 49802—Decided December 30, 1985.)

*Paul Greenberger,* for appellee and cross-appellant.

*Gerald Ozan,* for Gerald M. Fleeter et al.

*David A. Shorr,* for appellant and cross-appellee.

PATTON, J. This appeal arises from the judgment entered by the Cuyahoga County Court of Common Pleas which awarded the plaintiff-appellee, Stuart J. Graines, the sum of $8,125.57, with interest. The judgment was entered against the defendant-appellant, Northeast Ohio Regional Sewer District, as a refund of sewerage charges improperly paid by Graines. The facts giving rise to this appeal as contained in the record provide the following:

On May 7, 1984, Stuart J. Graines, Trustee (hereinafter "Graines"), filed a complaint against Gerald and Hannah Fleeter (hereinafter "Fleeters") and the city of Cleveland. The complaint alleged that the defendants Fleeters did not convey the Maple Park Apartments to Graines free and clear of outstanding water and sewer obligations. Graines alleged that the city of Cleveland did not have a perfected lien on these utility obligations and had used threats to collect these water and sewer debts. On November 6, 1984, Graines filed an amended complaint joining the Northeast Ohio Regional Sewer District (hereinafter "sewer district") as a new party defendant. Graines alleged that the sewer district wrongfully took his property using coercive measures to accomplish it. Graines requested judgment amounting to $20,906.73 from the defendants.

Graines brought his cause of action on his own behalf and, pursuant to Civ. R. 23, on behalf of all other persons similarly situated. On December 18, 1984, the trial court dismissed the class action component of Graines' complaint for failure to state a claim maintainable as a class action pursuant to Civ. R. 23(C)(1).

On January 2, 1985, the sewer district filed its answer and cross-

claimed against the Fleeters. The sewer district alleged that the Fleeters are liable to it for unpaid sewerage charges when the Fleeters owned the Maple Park Apartments. The sewer district also alleged that the Fleeters are liable to the district for any court-ordered payments made by it reimbursing Graines for charges he paid.

On January 18, 1985, a settlement was reached by Graines with the city of Cleveland and the Fleeters immediately prior to trial. A settlement was also reached between the sewer district and Graines regarding a portion of the sewer and water debt paid by Graines. The remaining amount in dispute is $8,125.57 which Graines alleged was wrongfully paid by him to the sewer district and should be refunded.

The trial court, sitting without a jury, heard the instant case on January 18, 1985. On January 28, 1985, the court entered judgment in favor of Graines against the sewer district in the amount of $8,125.57, plus interest. The court also entered judgment in favor of the sewer district against the Fleeters in the amount of $10,066.20, plus interest. It is from the judgment ordering the sewer district to refund the disputed amount that the sewer district appeals.

The sewer district filed a timely notice of appeal on February 5, 1985. On that same date, the court granted the sewer district's motion to stay proceedings. A notice of appeal was filed by Graines on February 15, 1985. In his notice of appeal, Graines stated that he was appealing from the judgment entry of January 28, 1985. Both cases were consolidated by this court *sua sponte* on March 8, 1985.

The Northeast Ohio Regional Sewer District is a political subdivision created under R.C. Chapter 6119. It is charged with one major task: the conveyance and treatment of wastewater from the city of Cleveland and several of its suburbs. R.C. 6119.06(V)[1] provides the sewer district with authority to levy charges for its services. The district levies charges which are based upon actual water used at each individual account.

On March 24, 1983, Graines entered into a purchase agreement for the acquisition of commercial rental property known as Maple Park Apartments located in Maple Heights, Ohio. The property consists of five buildings with approximately sixty-five rental units.

The purchase agreement provided that:

"At the time of Closing hereof, Seller [the Fleeters] will furnish written assurance to Buyer [Graines] that no monies are due from Seller [the Fleeters] to the utility companies furnishing water and sewer to the property and that there are no restrictions upon such utility companies which would interfere with water and sewer services and written assurances that no monies are due from Seller [the Fleeters] to the respective utility companies for gas, electricity, water or sewer."

The property was transferred on May 2, 1983. The record reveals that Graines never received or requested a written assurance of payment of the

---

[1] R.C. 6119.06(V) reads:

"(V) Charge, alter, and collect rentals and other charges for the use of services of any water resource project as provided in section 6119.09 of the Revised Code. Such district may refuse the services of any of its projects if any of such rentals or other charges, including penalties for late payment, are not paid by the user thereof, and, if such rentals or other charges are not paid when due and upon certification of nonpayment to the county auditor, such rentals or other charges constitute a lien upon the property so served, shall be placed by him upon the real property tax list and duplicate, and shall be collected in the same manner as other taxes; * * *."

obligation for sewer and water utilities. Graines testified that the title company found no liens in its search of the property's records.

Five separate sewer accounts, each servicing one building of the property, had delinquencies at the time of the transfer. On August 11, 1983, the city of Cleveland initiated action to terminate water service for nonpayment of accumulated arrearages. Shutoff notices were left at each of the five buildings if the bill had not been paid by August 16, 1983.

On August 12, 1983, Graines notified the city of Cleveland that he had purchased the property. A collection agent for the city proceeded on the same day to issue a "hold collection order" with a notice that there was a new owner. The collection agent advised Graines to pay only the current bill and that she knew that the bill did not belong to him. Graines transmitted a copy of his deed to the city by letter dated August 12, 1983.

The collection agent testified that she had told Graines that it was not the policy of her office to collect arrearages of the old owner from the new owner. She stated that she had tried to find other property owned by the Fleeters to transfer the debt to that account. The collection agent also checked with the title company to see if monies were available in the escrow account to pay the debt. Meanwhile, the arrearage remained on Graines' account. The city of Cleveland, as billing agent for the sewer district, continued to send bills to Graines carrying the Fleeters' outstanding obligations. The record reveals that the city of Cleveland, Utilities Department, sent out bills specifically for sewer charges on behalf of the sewer department.

On October 12, 1983, the GMS Management Company, with Graines as trustee, paid the current charges on each of his accounts. With the payment check, Graines wrote a second letter enclosing a copy of the August 12, 1983 letter. Graines testified that he and a member of his office staff telephoned the city of Cleveland to remove the arrearages. After speaking with Graines on August 12, 1983, the collection agent testified that she had not sent any further notices to shut off the water. Graines testified that he and his staff member were told that the amount could not be removed and the city considered him as the person who owed the money. Graines stated that no one from the sewer district had come to the property to discontinue his connection for sanitary sewerage.

On January 23, 1984, Graines paid said accounts for the full amounts billed including the delinquencies. The record reveals that the payment was not specifically paid to the collection agent. The arrearages were subsequently removed from Graines' accounts.

On March 20, 1984, the collection agent and the city of Cleveland received a letter demanding reimbursement for the amounts paid on the five accounts. The money was not refunded. Graines then brought this action against the city of Cleveland and eventually the sewer district for reimbursement.

The record reveals that Graines is a licensed attorney in the state of Ohio. Graines has been the manager or owner of well over two thousand suites and has dealt with the city of Cleveland and the sewer district previously.

The court found that the city of Cleveland Water Department acts for itself and as agent of the sewer district. The court determined that Graines had duly notified the defendants that certain water-sewer charges were improper and were incurred by prior owners, and that he had provided the defendants with a copy of his deed of transfer. The court also found that the defendants threatened a shutoff of water service and continued to bill Graines for these charges

until such time that Graines felt obliged to pay them under protest to avoid the possibility of discontinued water services to his tenants.

On appeal, the sewer district assigns seven errors:

"I. The trial court erred in determining that sewerage service charges levied by the Northeast Ohio Regional Sewer District are personal debts of the property owner, not the debts of the property.

"II. The trial court erred in determining that the payment of sanitary sewerage charges were [*sic*] made under duress.

"III. Plaintiff failed to comply with the applicable city of Cleveland codified ordinances, and therefore is barred by laches from raising this claim at this time.

"IV. The trial court erred in determining that payment of lawful sanitary sewerage charges on an account can be refunded.

"V. The trial court erred in determining that a protest to the payment of sanitary sewerage charges had been validly and timely made.

"VI. The trial court erred in granting judgment to plaintiff against the sewer district in light of the fact that defendants Fleeter[s] have already admitted liability to plaintiff pursuant to the purchase contract.

"VII. The trial court erred in awarding plaintiff prejudgment interest on that amount."

Graines assigns one error in his cross-appeal:

"The trial court abused its discretion in dismissing the class action claims without granting the required evidentiary hearing."

Graines also argued that he is entitled to damages for delay pursuant to App. R. 23.

## A. APPEAL

### I

In its first assignment of error, appellant contends that delinquent sewerage charges are debts *in rem* and remain debts of the property even after a transfer. This contention is without merit.

Appellant relies on the following wording of R.C. 6119.06(V) to support its argument: "* * * [sewer service charges] constitute a lien upon the property so served, * * *." This phrase must be placed in the context of the entire statute to interpret the legislature's intent.

R.C. 6119.06(V) provides in pertinent part:

"Such [regional water and sewer] district may refuse the services of any of its projects if any of such rentals or other charges, including penalties for late payment, are not paid by the user thereof, and, if such rentals or other charges are not paid when due and upon certification of nonpayment to the county auditor, such rentals or other charges constitute a lien upon the property so served, shall be placed by him upon the real property tax list and duplicate, and shall be collected in the same manner as other taxes; * * *."

The use of the word "user" in the statute clearly indicates the intent of the legislature to make these debts personal. Under the express language of the statute, delinquent sewerage charges do not become debts of the property (*i.e.*, a lien) until the nonpayment is certified to the county auditor who must also place it on the real property tax duplicate. The statute's language indicates that unpaid sewerage charges are debts of the "user" rather than debts of the property until the charges are made a lien on the property.

In *Western Reserve Steel Co. v. Cuyahoga Heights* (1928), 118 Ohio St. 544, 161 N.E. 920, the Supreme Court of Ohio held that a municipal waterworks could not refuse service to the property owner, even though the previous owner's bill had not been paid. The court found, when it interpreted several statutes, that the unpaid rent did not

become a lien on the premises by operation of law once the water rent became unpaid. Absent a lien, the city could not look to the present owner for payment of the bill. Thus, the debt of a property owner may only become chargeable against the property by virtue of a lien.

In the instant case, the sewerage charges were incurred by the previous owners and remained unpaid at the time of the transfer. The sewer district had taken no steps to create a lien on the property as outlined in R.C. 6119.06(V) by the transfer date. As the sewer district did not avail itself of the protection afforded by statute to insure payment of delinquent charges, it cannot now hold Graines liable for the personal debt of the Fleeters. Graines, as the present owner, was not responsible for the accrued charges. At the time of the transfer of the property and after the transfer, these arrearages were debts *in personam*.

Appellant's first assignment of error is not well-taken.

## II

Appellant contends that the trial court incorrectly found that the accumulated sewer charges were paid by Graines in order to avoid the water service's being discontinued. Appellant contends that the one threat to possibly shut off appellee's water is not enough to constitute duress. Appellant's contentions have merit.

The record reveals that appellee was never threatened with the disconnection of his sewer services because of nonpayment. Appellee only received a notice issued by the city of Cleveland, Division of Water, stating that the water would be discontinued if payment was not received by a certain date.

In *Union Properties, Inc.* v. *Cleveland* (1943), 142 Ohio St. 358, 27 O.O. 270, 52 N.E. 2d 335, the Supreme Court of Ohio in affirming this court addressed the issue presented in the instant case. In *Union Properties,* the plaintiff alleged that payments it had made for sewer rental charges were made under duress. The plaintiff had contended that it was threatened with a shutoff of its water service for its nonpayment of the sewerage charges. In *Union Properties,* the court quoted the definition of "duress" contained in American Jurisprudence:

" 'To constitute duress, making a payment of money involuntarily, there must be unlawful coercion, destroying free agency to pay or not to pay, according to one's own will.'

" * * *

" 'The mere fact that a person is in fear of some impending peril or injury, or in a state of mental perturbation at the time of doing any act, is not sufficient ground for holding that the act was done under duress.' " *Id.* at 362-363, 27 O.O. at 272, 52 N.E. 2d at 337.

The court's opinion continued:

"Here, the most that plaintiff claims with respect to the payment it sent directly to the city treasurer is that the same was made under threat that water service would be discontinued and upon the belief of one of its officers that the water service would in fact be disconnected. *Surely, payment under these circumstances falls short of involuntary payment under duress or compulsion within the above definitions."* (Emphasis added.) *Id.* at 363, 27 O.O. at 272, 52 N.E. 2d at 337.

In the instant case, Graines testified that the only threat he received was the shutoff notice in August 1983. This threat was alleviated and eliminated by the collection agent's actions informing Graines not to worry about a shutoff and by placing a notice to hold collections on the five accounts. Graines, like the plaintiff in *Union Properties,* had health and safety concerns if the water was disconnected; the Supreme Court of Ohio held in *Union Properties* that a threat of discontinued water service was not duress. This court, following the holding of *Union Properties,* finds that the cir-

cumstances present in the case *sub judice* did not constitute duress. The trial court erred in its determination that appellee paid the sewerage charges under duress.

Accordingly, appellant's second assignment of error is well-taken.

### III

In its third assignment of error, appellant contends that the city of Cleveland Codified Ordinances Sections 535.41 and 535.42 establish procedures to prevent the transfer of real property with delinquent water charges. Because the appellee did not comply with these sections, appellant asserts that he should be barred by the doctrine of laches from collecting from the sewer district. Appellant's contention does not have merit.

Laches is an affirmative defense which must be raised by the pleadings. Civ. R. 8(C); *McGrath* v. *Kneisley* (App. 1956), 75 Ohio Law Abs. 52, 142 N.E. 2d 530.

Under the Ohio Rules of Civil Procedure, the failure to raise an affirmative defense by way of an answer is not fatal if the defendant amends his pleading or if the issue is tried at court. See *Spies* v. *Gibson* (1982), 8 Ohio App. 3d 213, 8 OBR 285, 456 N.E. 2d 1284; *Chandler* v. *General Motors Acceptance Corp.* (1980), 68 Ohio App. 2d 30, 19 O.O. 3d 90, 426 N.E. 2d 521. In the instant case, appellant has not pleaded laches, it has not amended its pleadings, and the issue was not tried by the court. Appellant raises the affirmative defense of laches for the first time at the appellate level.

As appellant has not timely raised the defense of laches, it is precluded from raising it on appeal.

Accordingly, appellant's third assignment of error is not well-taken.

### IV

In its fourth assignment of error, appellant contends that appellee's payment of lawful sanitary sewerage charges on an account cannot be refunded to him. Appellant's contention has merit.

In *Union Properties, Inc.* v. *Cleveland, supra,* the Supreme Court of Ohio addressed this issue. In that case, the court dealt with a Cleveland city ordinance which provided that when payment of municipal sewer charges became delinquent, the city would certify such delinquency to the county auditor who would then place such unpaid charges upon the tax duplicate for collection. The plaintiff in *Union Properties* had purchased certain properties at a foreclosure sale. Prior to the sale, the city had certified the unpaid sewerage charges from those properties to the auditor who then placed them on the duplicate. Plaintiff paid the charges but then brought suit claiming that the payment was made under duress and that the charges were not its legal obligation. Plaintiff asked that the money be refunded. The Supreme Court of Ohio refused to order reimbursement of the payment. In addressing this specific issue, the court stated as follows:

"Plaintiff also contends that the payment made by it directly to the city treasurer and the one made through the sheriff were due to a mistake of fact, which entitles it to a return of payments.

"Some duty rested on plaintiff to ascertain for what purpose it was expending its money. * * * Had the city, without right or justification, actually discontinued the water service for refusal to pay, *the courts were open for prompt relief.*

"The rule is that if by reasonable diligence one, under a legal duty to do so, can obtain knowledge of a fact, and fails or neglects to do so, thereupon pays money to discharge a legitimate debt, *he cannot require its return as having been paid under a mistake of fact or of misapprehension.* * * *"* (Citation omitted; emphasis added.) *Id.* at 363-364, 27 O.O. at 270, 52 N.E. 2d at 337-338.

Based on *Union Properties,* the law is clear that when a payment is voluntarily made on a legal and valid debt for sewerage service charges, it cannot be refunded even if it is made in error. In the instant case, the appellee paid voluntarily the sewer charges accumulated prior to his ownership. The appellee contends that these arrearages were not lawful because he was not the user. His argument fails. In *Union Properties,* the plaintiff was likewise not the user of the sewerage service prior to its ownership; the court held that the plaintiff was not entitled to a refund.

Appellant's fourth assignment is well-taken.

V

Appellant contends in its fifth assignment of error that the trial court incorrectly found that appellee made a timely protest regarding his payment of delinquent sewerage charges. Appellant's contention has no merit.

On January 23, 1984, appellee paid the disputed arrearages on both the sewer and water services. The record reveals that appellee protested his payment to appellant's authorized billing agent, the city of Cleveland, by letter dated March 20, 1984. Appellee then initiated this suit on May 7, 1984 against the city of Cleveland.

Although appellee did not join the sewer district as a new party defendant until November 6, 1984, the city of Cleveland's earlier knowledge of the protest is imputed to its principal, the sewer district. See *State, ex rel. Nicodemus,* v. *Indus. Comm.* (1983), 5 Ohio St. 3d 58, 5 OBR 115, 448 N.E. 2d 1360; *Fay* v. *Swicker* (1950), 154 Ohio St. 341, 43 O.O. 243, 96 N.E. 2d 196, paragraph one of the syllabus (the knowledge of an agent while he is acting within the scope of his authority and in reference to a matter over which his authority extends, is ordinarily imputed to such agent's principal). In the case *sub judice,* the court found that the city of Cleveland was acting for itself and as agent of the sewer district. While acting in its capacity as billing agent for the sewer district, the city received appellee's notices of protest. Because these protests were timely made to its agent, appellant's contention that it was not timely notified does not have merit.

Appellant's fifth assignment of error is not well-taken.

VI

Appellant contends that the trial court erred in entering judgment for appellee Graines against the sewer district. Appellant asserts that it should have been dismissed and the proper judgment which should have been entered by the court was for appellee against the Fleeters for the full amount of the debt. Appellant's contentions have merit.

The court's judgment ordering appellant to reimburse Graines for his payment of the arrearages accumulated when the Fleeters owned the property is in error. Because the Supreme Court of Ohio in *Union Properties, supra,* held that a plaintiff who voluntarily paid a utility charge under a mistake of fact cannot require its return, appellee in the instant case is not entitled to a refund of his payments. Therefore, a judgment against the sewer district is not proper as the appellee is not able to be reimbursed by the sewer district.

The delinquent sewerage charges are personal debts of the Fleeters and Graines voluntarily paid those debts. The record does not reveal that at the time Graines paid these debts he paid them under protest to the city of Cleveland, the agent of the sewer district.

Accordingly, the trial court erred in entering judgment against the sewer district. Appellant's sixth assignment of error is well-taken.

## VII

Appellant contends in its seventh assignment that the court improperly awarded the appellee prejudgment interest on the judgment entered against appellant. Because this court finds that the trial court erred in granting judgment against appellant, this assignment of error is moot.

### B. CROSS-APPEAL

In his sole assignment of error, cross-appellant Graines contends that the court abused its discretion in dismissing his class action claims without conducting a hearing and without a motion by either party. Because this appeal was untimely filed, this court does not have to address the merits of Graines' contention.

In *Roemisch* v. *Mutual of Omaha Ins. Co.* (1974), 39 Ohio St. 2d 119, 68 O.O. 2d 80, 314 N.E. 2d 386, the Supreme Court of Ohio held that a trial court order, pursuant to Civ. R. 23(C)(1), determining that an action may not be maintained as a class action is a final, appealable order. In the instant case, Graines failed to appeal the dismissal of the class action, a final appealable order, within the thirty-day limit prescribed by App. R. 4(A). On December 18, 1984, the trial court dismissed the class action claims brought by Graines. On February 15, 1985, Graines filed his notice of appeal. In this notice, Graines stated that he was appealing from the judgment entry journalized January 28, 1985, and he attached a copy of the judgment thereto. In his brief, Graines addresses as his assignment of error the class action dismissal. The judgment entry makes no reference to this dismissal.

Accordingly, Graines' notice of appeal of February 15, 1985 which addressed the January 28, 1985 judgment is not timely filed to raise the issue of the class action dismissal.

Cross-appellant's assignment of error is not well-taken.

### C. EXPENSES

Appellee contends that he is entitled to reasonable expenses pursuant to App. R. 23 for the sewer district's appeal because its appeal is frivolous. This court finds that appellee's contention is not well-taken. This court finds that there were reasonable grounds for this appeal. The trial court erred in several respects including entering judgment against the appellant. Accordingly, appellee is not entitled to damages for delay pursuant to App. R. 23.

The judgment is reversed and the cause is remanded for further proceedings consistent with this journal entry and opinion.

*Judgment reversed
and cause remanded.*

JACKSON, J., concurs.

MARKUS, J., concurs in judgment only.