### PATTERSON, Plaintiff-Appellant, v. POLLOCK, et, Defendants-Appellees.

Ohio Appeals, First District, Hamilton County.

No. 6934. Decided December 20, 1948.

308

Henry B. Street, Walter K. Sibbald, Cincinnati, for appellant.
Nathan Solinger, Cincinnati, for appellee, Abe E. Robinson.

## OPINION

By MATTHEWS, PJ.:

The Notice of Appeal recites that the appeal is on questions of law from the order of the Common Pleas Court entered on the 26th day of November, 1947, ordering the plaintiff-appellant to restore the cause to its status prior to the making of certain entries therein set aside by placing the funds obtained from the Globe Wernicke Company in the custody of the Clerk of the Court.

The plaintiff's action was on a written contract dated February 14th, 1947, whereby the defendant agreed to pay the plaintiff $4600.00 as consideration for an order which the plaintiff had obtained from the Globe Wernicke Company for the manufacture of certain office supplies. The plaintiff gave the defendant credit for $400.00, which he had paid and prayed judgment for $4200.00, with interest.

The defendant was a non-resident and, on that ground, an order of attachment and garnishment was obtained naming the Globe Wernicke Company as garnishee. By letter to the Clerk of Courts, the Globe Wernicke Company acknowledged that in owed the defendant $4755.54, which it stated it withheld pending the action of the court.

Thereafter, Abe E. Robinson, by leave of court, filed an application for leave to intervene. In this application he alleged that the plaintiff was "in fact a constructive trustee for the applicant in the subject matter of the petition." This application was supported by the affidavit in which he set forth that the plaintiff had been his employee; that while he was so employed affiant had initiated negotiations with the Globe Wernicke Company for this order to manufacture office supplies, and then assigned the task of continuing the negotiations to the plaintiff as his agent; that plaintiff continued said negotiations as his agent until February 7th, 1947, and was paid a salary by affiant for so doing; that on that date plaintiff abruptly withdrew from affiant's employ without notice of any kind, and immediately proceeded to continue the negotiations on his own behalf, resulting in the contract sued upon by the plaintiff; that the plaintiff violated his duty of loyalty to the affiant and by reason thereof became a constructive trustee for affiant's benefit.

The court granted the application to intervene, to which no exception was taken. Thereupon, Robinson filed an intervening petition, setting forth in somewhat greater detail the averments of his affidavit in support of his application for

leave to intervene. The prayer was that the court grant the prayer of the petition, but impress a trust upon it in favor of the intervenor and "such additional relief as may be proper in the circumstances."

To this intervening petition, the plaintiff answered admitting that he had been employed by the intervenor with a drawing account, and denying all other allegations.

The defendant entered a general denial to the intervening petition.

Neither the plaintiff nor the defendant challenged the legal sufficiency of the intervening petition.

The law relating to the duty of the agent after termination of the agency is set forth in Section 396 of the Restatement of Law, as follows:

"Unless otherwise agreed, after the termination of the agency, the agent:

\* \* \*

"(b) is subject to a duty to the principal not to use or disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. The agent may use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent."

See, also, 2 Am. Jur., 219, where it is said:

"After the termination of the agency, according to the American Law Institute's view on the point, an agent, unless there is a contrary agreement, is subject to a duty to the principal not to use or disclose to third persons, on his own account or on account of others, in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty. The agent may use general information concerning the method of business of the principal and the names of the customers retained in his memory, if not acquired in violation of his duty as agent."

It is manifest that the intervenor by his allegations that he had specifically delegated to the plaintiff the duty of continuing the negotiations initiated by intervenor with The

Globe Wernicke Company and that the plaintiff without notice to him and in betrayal of the trust reposed in him, proceeded to negotiate on his own behalf, intended to bring himself within the rule just quoted. We do not consider that the case presented requires us to determine whether he has succeeded as though upon demurrer. There is no doubt whatever that a violation of the rule creates a cause of action in favor of the principal.

While the pleadings were in this state, the attorney for the plaintiff presented an entry to the Court and the court directed that it be spread upon the journal reciting that differences of opinion had arisen between the plaintiff and his counsel making it impossible for counsel to further represent the plaintiff; that plaintiff had discharged his counsel and counsel acknowledging payment in full for his services upon his application he was "removed of record as counsel for plaintiff."

On the same day that the order removing counsel of record was journalized, the plaintiff presented an order dissolving the attachment, and releasing the garnishee and authorizing it to dispose of any funds it was holding in any way it saw fit.

On the following day, the plaintiff personally presented an entry reciting that all matters in controversy had been compromised, settled, and fully satisfied "the petition heretofore filed is hereby dismissed." This was ordered entered by the court and was so entered.

Four days after the dismissal, the intervenor filed a motion to set aside the entry dismissing the action, the entry dissolving the attachment, and also the entry permitting plaintiff's counsel to withdraw on the ground that all of said entries had been made without notice to the intervenor. In his motion, the intervenor asked the court to require the parties to restore the case to its status prior to the making of the entries of which he complained.

As the result of a hearing on the motion, the court found that the entries complained of were presented without notice to the intervenor and without informing the court of the interest of the intervenor and that immediately following the journalization of the entries, the funds that had been sequestered in the hands of The Globe Wernicke Company, as garnishee, had been obtained by the plaintiff and defendant and distributed by them. On this finding, the Court sustained the motion and set aside and held for naught all the challenged entries and ordered the plaintiff and defendant to restore the cause to its status prior to the making of said

entries, by placing the fund obtained from The Globe Wernicke Company in the custody of the Clerk of the Courts within three days, where it would be held subject to the further order of the court. The plaintiff appealed from this order and assigned as errors that the plaintiff had the absolute right to dismiss his petition, and, therefore, the Court erred in setting aside the entry of dismissal, and also that the Court had no jurisdiction to require the plaintiff to restore the case to its status prior to dismissal by paying the money collected from the garnishee to the Clerk of Courts to abide the further order of the Court.

(1) We are cited to §11586 GC, and the case of **Cash, et al. v. Rose, Judge, 136 Oh St, 143,** construing it, and the claim is made that the Court disregarded the absolute right given the plaintiff to dismiss his action when it set aside the entry of dismissal. It will be noted that the entry in the case at bar does not in express terms purport to dismiss the action. It recites that the controversy between plaintiff and defendant had been settled and that "the petition—is hereby dismissed." The intervening petition is not mentioned. In Cash v. Rose, supra, the Court, speaking of plaintiff's right to dismiss said at page 146: "She was, therefore, **in the absence of any intervening party seeking affirmative relief,** entitled to prosecute or dismiss her action at her election." (Emphasis ours.) It may be that the plaintiff by the language used had in mind the quoted language and intended only to abandon his position as a plaintiff seeking relief. However, the case has been presented to this Court as though the entry that the Court set aside effected the dismissal of the entire action including the intervening petition. We hold that if the order of the court had that effect it was erroneous in the absence of consent by the intervenor. We also hold that no prejudice could result to the appellant by the action of the Court in setting aside the entry, because if it left the action still pending on the issues raised by the intervening petition and the answers thereto, the plaintiff remained a party to the action amenable to all lawful orders of the Court.

(2) We have already pointed out that the intervening petition contains averments showing a breach of loyalty on the part of the plaintiff as the agent of the intervener, from which a cause of action against the plaintiff arose. Now is this cause of action of such a nature as to give the intervener an interest in or title to the cause of action asserted by the plaintiff against the defendant? It is clear that the intervener has no independent right against the defendant. What-

ever right he has must be derived from his relation to the plaintiff.

In the Restatement, Agency, at section 399, the rule is stated as follows:

"A principal whose agent has violated or threatens to violate his duties has an appropriate remedy for such violation. Such remedy may be:

\* \* \*

(d) an action of quasi contract or an equitable action to enforce a constructive trust;

\* \* \* "

By the last clause of Section 314 of Restatement, Agency, it is said: "one who receives such things without notice but who is not a bona fide purchaser is subject to liability as a constructive trustee to the extent to which he has been unjustly enriched."

In 40 O. Jur., 308, et seq., it is stated that: "If, however, the employee has secured a lease or made profits—by virtue of his confidential relation with his employer, the court of equity may, through the devise of a constructive trust, impress this lease, profit or advantage with a trust in favor of the employer-cestui que trust."

The circumstance that the advantage obtained by the employee is in the form of a chose in action when the employer discovers the disloyalty and asserts his right is unimportant.

In his discussion on what may constitute the subject-matter of corpus of a trust it is said in 1 Bogart on Trusts, Section 114 that: "The word 'thing'—includes, of course, both tangible and intangible entities. The creditor's claim against a debtor, the stockholder's claim against his corporation are 'things' as well as an automobile or a tract of land."

"Interests in choses in action are among the more common types of trust property."

This whole subject of the right of the cestui que trust of a chose in action to enforce the trust, and the method of so doing, is discussed at length in 1 Scott on Trusts, at pages 124, et seq. At 124, it is said: "It is now well settled, however, that in order to avoid multiplicity of actions the beneficiaries may join the obligor as a co-defendant with the trustee, and thus the whole matter can be disposed of in a single suit."

We conclude on this phase of the case that Robinson had a right against the plaintiff, which he could assert in any form of action appropriate to the circumstances and that as the

circumstances existing at the time this action was filed, the debt owing by the defendant constituted the trust res an action in which plaintiff and defendant were parties, to enforce the intervenor's claim against it would have been appropriate and that as the intervenor found an action already pending between them involving that subject-matter, it, his intervention therein, was justified by the facts and the law. That such right of intervention is clear is manifest by reason of the provision of §11263 GC, and its interpretation set forth in 30 O. Jur., 793, et sec.

See, also, on this subject 39 Am. Jur., 939, and 3 Am. Jur., 181, et seq.

(3) But it is said that assuming all that has been said to be correct, nonetheless the Court had no power to order the plaintiff and defendant to restore the status quo by paying into the custody of the Clerk of Courts the amount of money which they had obtained from the garnishee by improperly securing its release from the obligation to hold to await an order of the court after a hearing on due notice to the parties.

In 14 Am. Jur., 370, it is stated:

"The 'inherent powers' of a court are such as result from the very nature of its organization and are essential to its existence and protection and to the due administration of justice. It is fundamental that every court has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction."

In 11 O. Jur., 644, it is said: "The power of a court to enforce its own proper orders is fundamental and inherent—The right to grant a rehearing is one of the essentials that inheres in the jurisdiction of the supreme court."

Of course, the power to punish for contempt is one of the most frequent occasions for exercising the inherent power of the court. Such power is not infrequently exercised to punish those who impose on the court. When such imposition exists it would seem that an order requiring the relinquishment of the advantage obtained by the imposition, would be the minimum requirement.

In United States, et al. v. Morgan, et al., 307 U. S., 183, at 197, the Court said:

"What has been given or paid under the compulsion of a judgment, the Court will restore when its judgment has been

set aside and justice requires restitution." The Court cites in support: Northwestern Fuel v. Brock, 139 U. S., 216, 219; Ex Parte Lincoln Gas & Electric Co., 257 U. S., 6; and Baltimore & Ohio Rd. Co. v. United States, 279 U. S. 781.

It has been suggested that the court lost all jurisdiction by reason of the payment by the garnishee on the theory that loss of jurisdiction over the res terminated the power of the court. That might be true if the jurisdiction of the court had been dependent solely upon retention of the res, but in this case the Court had acquired jurisdiction of both the plaintiff and defendant. The defendant had entered a general appearance by filing an answer to the plaintiff's petition and the plaintiff had entered his appearance by filing an answer to the plaintiff's petition and the plaintiff had entered his appearance to the intervening petition by filing an answer thereto.

We find nothing in the record that would preclude the attorney for the plaintiff from withdrawing as attorney of record, and, for that reason, the order setting aside that order is reversed.

For the reasons given, the other orders are affirmed.

MATTHEWS, PJ, & HILDEBRANT, J, concur in syllabus, opinion & judgment.

ROSS, J, concurs in that portion of opinion reversing order of trial court, and dissents as to that portion of opinion affirming orders of trial court, and concurs in paragraphs 1 and 4 of the syllabus.