Stewart, J.
 

 The theory upon which the courts below found for plaintiffs is that Zuercher, under Section 9586, General Code, was solely the agent of defendant,, and since Zuercher had full knowledge of the falsity of the statements in the application which Swicker signed and waigjjanted to be true, the knowledge of Zuercher became the knowledge of defendant, and as it issued its policy of insurance with that knowledge it cannot take advantage of any agreement or stipulation with reference to the warranty of the truth of the false answers in the application by Swicker.
 

 Section 9586, General Code, reads as follows:
 

 “A person who solicits insurance and procures the application therefor, shall be held to be the agent of the party, company or association, thereafter issuing a policy upon such application or a renewal thereof, anything in the application or policy to the contrary notwithstanding. ’ ’
 

 It is a query whether this section is applicable to any contracts of insurance except those concerning buildings and structures. The section stems from an act “to regulate contracts of insurance of buildings and structures,” enacted March 5,1879 (76 Ohio Laws, 26, Section 2). It was coupled with present Section 9583, General Code, which requires agents in this class of insurance to examine the buildings or structures insured and to fix their insurable value.
 

 Section 9586, General Code, was amended in 1904 (97 Ohio Laws, 160), but still carried the designation that it concerned insurance on buildings and structures. The section was codified in the Revised Statutes of
 
 *347
 
 1880 under the heading, “insurance companies other than life,” and it was not until the revision of the Code in 1910 that the section received its present number and was placed under the general provisions in respect to insurance upon property and against certain contingencies.
 

 In the case of
 
 John Hancock Mutual Life Ins. Co.
 
 v.
 
 Luzio,
 
 123 Ohio St., 616, 625, 176 N. E., 446, Judge Jones said:
 

 “* * # Section 9586, General Code, provides that an agent who solicits fire insurance shall be held to be the agent of the company.”
 

 However, whether Section 9586 applies to solicitors of insurance other than on buildings and structures is not important in the present cases, since the undisputed evidence demonstrates that Zuercher was the agent of defendant in all of the transactions leading up to the issuance by defendant of the policy to Swicker.
 

 At common law a principal is chargeable with and is bound by the knowledge of his agent, received while the agent is acting within the scope of his authority and in reference to a matter over which his authority extends.
 

 There are two different theories upon which the knowledge of facts possessed by an agent is imputed to the principal. One theory is that it is presumed that the knowledge of the agent was communicated to the principal. The other theory, which is the Ohio doctrine, is that there is a legal identity of the principal with the agent, the agent being the alter ego of the principal.
 
 First National Bank of New Bremen
 
 v.
 
 Burns,
 
 88 Ohio St., 434, 440, 441, 103 N. E., 93, 49 L. R. A. (N. S.), 764.
 

 Ordinarily, the knowledge which Zuercher had of the falsity of the statements which Swicker warranted as true in the application for insurance would be imputed
 
 *348
 
 to defendant'. However, we know of no sound reason why two parties cannot enter into a valid contract substituting a different rule for the common-law doctrine of imputed knowledge and agreeing that it should not be binding as between them, and there is nothing in the language of Section 9586, G-eneral Code, which prohibits or restricts a right to make such a contract.
 

 In the present cases, although ordinarily defendant would be bound by knowledge which its agent obtained within the scope of his authority, it did issue its policy to Swicker without actual knowledge and relied upon two motivating material answers in Swicker’s application, to the effect that he had never had an insurance policy cancelled and that he had had no accidents during the two previous years except a minor one. As soon as defendant learned the falsity of the foregoing statements, and while the policy was still in the hands of its agent and had not been delivered to Swicker and no premium had been accepted therefor, it notified Swicker of the cancellation of the policy because of his false warranties.
 

 The policy contained the provision:
 

 “No notice to an agent, or knowledge possessed by an agent or by any other person shall be held to effect a waiver or change in any part of this policy, nor estop the company from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by the president or secretary of the company.”
 

 That language constituted a contract between the insurer and the insured supplanting with a different rule the common-law rule as to the imputation of the knowledge of an agent to his principal, and we are unable to see any reason, either in public policy or otherwise, why two parties may not make such an agreement.
 

 
 *349
 
 The Court of Appeals held the view that the limitation upon the power of the agent in the foregoing policy provision can only be effectively invoked as to situations or circumstances arising after the issuance of the policy, and that to permit the limitation to operate with respect to situations existing at the time of the preparation of the application and preceding the issuance of the policy would be to free the defendant from the rule that the knowledge of the agent is imputed to the principal. The court relied strongly upon the cases of
 
 Foster
 
 v.
 
 Scottish Union & National Ins. Co. of Edinburgh,
 
 101 Ohio St., 180, 127 N. E., 805; and
 
 Hartford Fire Ins. Co.
 
 v.
 
 Glass,
 
 117 Ohio St., 145, 158 N. E., 93.
 

 In the
 
 Foster case,
 
 Foster had a policy of fire insurance which stipulated that it should be void, unless otherwise provided by agreement, if the subject of insurance was a building on ground not owned by the insured in fee simple. The policy had been procured by a loan company, which was a mortgagee of the insured property, through an agent of the insurance company who was also an employee of the loan company. That agent knew the building insured was on leased ground, but Foster had never seen the policy, it being retained by the loan company as the insurance was payable to the loan company as its interest might appear.
 

 Premiums had been paid on the policy for 28 years and when the insurance company resisted payment for a fire loss this court held that the knowledge of the agent of the fire insurance company as to the title by which the property was held, with respect to which property the agent acting within the scope of his authority procured the issuance of a policy of fire insurance, was imputed to the principal, and that, as to such matters so known to such agent, the insurance
 
 *350
 
 company was deemed to have knowledge, notwithstanding a clause in the policy which provided that no officer, agent, or other representative of the insurance company should have power to waive any provision or condition of the policy.
 

 The court did distinguish that case from
 
 Ohio Farmers’ Ins. Co.
 
 v.
 
 Titus,
 
 82 Ohio St., 161, 92 N. E., 82, where an apparently contrary view was taken, by stating that in the
 
 Titus case
 
 the knowledge of the agent came to him after the insurance policy had been issued and a premium paid thereon, whereas in the
 
 Foster case
 
 the agent had the knowledge at the inception of the policy.
 

 In the
 
 Foster case,
 
 Judge Merrell relied strongly upon the doctrine of estoppel and said:
 

 “On this theory, the company, in the present case, having accepted the payment of premiums for 28 years, with knowledge imputed to it of facts as to the title of the insured, entitling it to avoid the obligations of the policy, will be deemed to have elected the position of responsibility thereunder.”
 

 It seems to us that such view is sound and that it would have been infamous to absolve the insurance company from liability in the
 
 Foster case.
 
 The
 
 Glass case
 
 follows the
 
 Foster case.
 

 In the present cases we have a different situation. The agent still had possession of the policy and no premium had been accepted thereon. In the
 
 Foster
 
 and
 
 Glass cases
 
 the policies contained the provision that no officer, agent, or other representative of the company should have the power to waive any provision or condition of the policy. The policy in the instant cases contained a contractual provision that no knowledge possessed by an agent or by any other person shall bo held to effect a waiver or change in any part of the policy.
 

 
 *351
 
 Although it is true that there are many instances where, under the theory of estoppel or from other circumstances such as acquiescence by a principal in the waiver of conditions in a policy by an agent, it would be inequitable for a principal to be absolved from liability because the acts of the agent were not authorized in writing, in the instant cases it would be unjust not to give effect to the contract between defendant and Swicker.
 

 The policy was issued in reliance upon the false statements in the application which Swicker by his signature warranted to be true. There can be no doubt that they were material statements upon which the defendant relied. Although Swicker said he did not know what the answers were, he did sign the application with the printed questions in it to which the answers were given and with the printed provisions as lo the agreement to supplant the common-law rule as to the effect of the agent’s knowledge, and Swicker thus put it in the power of the agent to deceive and practice a fraud upon defendant.
 

 The situation in the present cases is entirely different from one concerning knowledge of impairment of title of the insured property, which knowledge an agent might innocently think would make no difference in the insurability of the property.
 

 As to the plaintiffs in the present cases, their rights against defendant can rise no higher than the rights of Swicker against defendant. Unless Swicker would be entitled to recover against defendant, if he had paid the judgments which plaintiffs had recovered against him, plaintiffs could not recover against defendant under Section 9510-4, General Code.
 
 Stacey
 
 v.
 
 Fidelity & Casualty Co. of New York,
 
 114 Ohio St., 633, 151 N. E., 718;
 
 Luntz et al., Exrs.,
 
 v. Stern, 135 Ohio St., 225, 20 N. E. (2d), 241.
 

 
 *352
 
 The judgments of the Court of Appeals and of the Court of Common Pleas are reversed and final judgments are entered for defendant appellant.
 

 Judgments reversed.
 

 Matthias, Hart and Taft, JJ., concur.
 

 Weygandt, C. J., Zimmerman and Faitght, JJ., dissent.