COSTANZO et al., Appellants,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY et al., Appellees.

[Cite as *Costanzo v. Nationwide Mut. Ins. Co.*, 161 Ohio App.3d 759, 2005-Ohio-3170.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040482.

Decided June 24, 2005.

760

Cohen, Todd, Kite & Stanford, L.L.C., Donald J. Rafferty, and Janet Campbell; Strauss & Troy, Richard S. Wayne, William K. Flynn, and Nicole M. Lundrigan, for appellants.

Thomson Hine L.L.P., Bruce M. Allman, and Mathew C. Curran, for appellees.

GORMAN, Judge.

{¶ 1} Plaintiffs-appellants, Dominic Costanzo and Ronald Kallam, the representatives of a class of independent-contractor insurance agents (collectively, the

"agents") under an exclusive contract with the defendants-appellees [1] (collectively, "Nationwide"), brought this declaratory-judgment class action [2] seeking a declaration of their rights in the ownership of the names and other information of Nationwide's policyholders. Policyholder information is a valuable asset necessary for anticipating the future financial and insurance needs of Nationwide's customers. Upon cross-motions for summary judgment, the trial court declared that, pursuant to a 2001 agreement executed by the parties, policyholder information entered into Nationwide's computer system was proprietary to Nationwide. We affirm the judgment of the trial court because (1) under the common law of agency, the policyholder information was the property of Nationwide, (2) the language of the agreement was sufficiently clear to evidence a conveyance of ownership to Nationwide, and (3) the conveyance was supported by consideration.

## Facts

{¶ 2} The certified class consists of about 500 insurance agents selling policies of insurance exclusively for Nationwide under a 1987 Agent's Agreement or a similar Corporate Agency Agreement. The Agent's Agreement provides that the agents are independent contractors working exclusively for Nationwide in the sale and service of its insurance policies. The agents are paid by commission, and the agency relationship is terminable at will by either party.

{¶ 3} This action was filed in response to Nationwide's requirement that all Ohio agents sign a new "Systems Service & Computer Agreement" (the "Computer Agreement") effective January 5, 2001.[3] The Computer Agreement identified the parties' rights and responsibilities under a new computer system installed by Nationwide to communicate with its agents and to store and retrieve policyholder and other insurance information. The Computer Agreement further required Nationwide to provide the agents with servers, routers, software, and documentation for the system. Nationwide supported and repaired the system. The agents were billed $100 per month as a service fee. A refusal to sign the Computer Agreement or its termination also terminated the Agent's Agreement and ended an agent's relationship with Nationwide.

---

1. The defendants-appellants are Nationwide Mutual Insurance Company, Nationwide Fire Insurance Company, Nationwide Life Insurance Company, Nationwide General Insurance Company, Nationwide Property & Casualty Insurance Company, Nationwide Variable Life Insurance Company, and Colonial Life Insurance Company.

2. Class certification was affirmed in *Costanzo v. Nationwide Mut. Ins. Co.* (Dec. 11, 2002), 1st Dist. No. C–020105, appeal not accepted, 98 Ohio St.3d 1538, 2003-Ohio-1946, 786 N.E.2d 901.

3. After the denial of a temporary restraining order, both class representatives signed the Computer Agreement.

{¶ 4} The Computer Agreement identified the duties and the rights of the parties as to policyholder information entered into the new system. Paragraph nine stated, "At all times, the Nationwide System and policyholder data will remain the property of the Company and will be subject to the Company' [sic] privacy policies. You agree not to copy, disclose, publish, release, transfer, or otherwise make available any hardware, software, manuals, and related documentation provided by Nationwide, and all policyholder information, in any form, to any person other than your employees or service personnel you select to work on your System. You also agree that the Nationwide System (hardware, software, manuals, policyholder information and related documentation) are [sic] the property of and proprietary to, Nationwide or Nationwide's third party vendors, and further agree to protect the Nationwide System (hardware, software, manuals, and related documentation) or any part thereof, from unauthorized use or disclosure."

{¶ 5} While the Computer Agreement did not address the ownership of policyholder information not stored or transmitted by the Nationwide computer system, it clearly indicated that to continue to sell and service Nationwide insurance policies, the agents were required to employ the Nationwide computer system and to execute the Computer Agreement. In essence, all policyholder information in the agents' possession that was required to sell and service insurance policies had to be entered into the system.

{¶ 6} The agents by their declaratory-judgment action asked the trial court to declare that the Computer Agreement required agents to execute the Computer Agreement and to "transfer ownership" of policyholder-information assets to Nationwide without consideration. They sought a declaration that they owned the policyholder information. The trial court declared the rights of the parties under the Agent's Agreement and the Computer Agreement and concluded that the agreements unambiguously vested the ownership of the policyholder information in Nationwide.

{¶ 7} In their sole assignment of error, the agents contend that the trial court erred in entering summary judgment against them, because the intent of the Computer Agreement was ambiguous and did not unequivocally transfer ownership of the policyholder information to Nationwide, because the Agreement was not supported by consideration, and because it was an unenforceable noncompetition agreement.

Policyholder Information

{¶ 8} "Policyholder information is the particular customer information that is vital to both insurance companies and insurance agents because it provides, among other things, the details of a policyholder's past transactions and possible

future needs." (Footnotes omitted.) Freeman & Eggert, Exploration of Policyholder Information Ownership Rights Under the Three Existing Insurance Agency Systems in the United States (2002), 32 W.New Eng.L.Rev. 409, 409–410. It is typically obtained by the agent. It includes the date of a policy's expiration, the amount of coverage, the premiums to be paid, the property covered, and the other terms of an insurance policy. It also includes a variety of personal information about the insured that would be difficult or costly to obtain by other means. See Regan, Agent Discretion and the Choice of Insurance Marketing System (1996), 39 J.Law & Econ. 637, 639.

{¶ 9} Policyholder information is a valuable asset necessary "for the purpose of soliciting continued or future patronage." Cleary, Core Deposit Base: Goodwill or Not Goodwill—Is That the Question? (1990), 39 Cath.U.L.Rev. 795, 825. Given a shrinking market for insurance sales, policyholder information is a "vital marketing and sales tool[ ]" for both insurance companies and insurance agents. Freeman & Eggert, 32 W.New Eng.L.Rev. at 410. In this declaratory-judgment action, the agents and Nationwide contested the ownership of policyholder information collected largely by the agents and then placed into Nationwide's computer system.

## Standard of Review

{¶ 10} The trial court resolved the issues on cross-motions for summary judgment. The parties' election to address the issues by cross-motions for summary judgment demonstrated that both parties believed that no genuine issue of material fact was in dispute and that the court was free to review the contracts and to render a decision as a matter of law. See *Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emp., AFL–CIO* (1994), 93 Ohio App.3d 162, 164, 638 N.E.2d 94.

{¶ 11} We review summary-judgment determinations de novo, without deference to the trial court's ruling. See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243. Summary judgment is appropriately granted when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can only come to a conclusion adverse to the nonmoving party when viewing the evidence in the light most favorable to the nonmoving party. See Civ.R. 56(C); see, also, *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

## Exclusive Agency and Ownership of the Information under the Common–Law

{¶ 12} The agents' primary argument, that the Computer Agreement, for a variety of reasons, failed to unambiguously convey a proprietary ownership

interest in the policyholder information to Nationwide, assumes that Nationwide did not have an ownership interest before the execution of the Computer Agreement. The agents rely upon the trial court's conclusion that the earlier Agent's Agreement did not convey an ownership interest to Nationwide. In reaching the conclusion that the Computer Agreement imposed an obligation upon the agents that did not exist under the earlier agreements, the trial court interpreted the language of the Agent's Agreement and cited *Nationwide Mut. Ins. Co. v. Fleming*, an unreported decision of the United States District Court for the Western District of Pennsylvania, in support of this contention. See (June 24, 2002), W.D.Pa. No. 99–1417.

{¶ 13} But the trial court's decision identifying the Computer Agreement as the contract that created Nationwide's exclusive ownership interest presupposed that the interest could have been created only by a written agreement between the parties and ignored the rights to the information created under the common law of agency, which can govern relationships in which one person acts for another by the latter's authority. See, e.g., *Nationwide Mut. Ins. Co. v. Darden* (1992), 503 U.S. 318, 323–324, 112 S.Ct. 1344, 117 L.Ed.2d 581 (applying the common-law principles of agency to determine whether an insurance agent was an employee for purposes of the Employee Retirement Income Security Act of 1974).

{¶ 14} Historically, an insurance agent has acted on behalf of only one insurance company. "All of the agent's * * * activity and loyalty was for his * * * principal. Hence, the [policyholder information] belonged to the principal, the insurance company, and not to the agent." *In re Roy A. Dart Ins. Agency, Inc.* (Bankr.D.Mass.1980), 5 B.R. 207, 209; see, also, *Hardin Cty. Farm Bur. v. Farm Bur. Mut. Ins. Co.* (Ky.1960), 341 S.W.2d 62, 63 (an insurance company maintains title to the records that come into the hands of its exclusive agent).

{¶ 15} This common-law principle is embodied in the Restatement of the Law 2d, Agency (1958), Section 395, which provides that "[u]nless otherwise agreed, an agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal *or acquired by him during the course of or on account of his agency* * * * in competition with or to the injury of the principal * * *." (Emphasis added.) Similarly, Section 396(b) states that "after the termination of the agency, the agent * * * has a duty to the principal not to use or to disclose * * * in competition with the principal or to his injury, trade secrets, written lists of names, or other similar confidential matters given to him only for the principal's use or acquired by the agent in violation of duty." These principles accurately state the common law of agency in Ohio. See *Patterson v. Pollock* (1948), 84 Ohio App. 489, 491, 39 O.O. 566, 84 N.E.2d 606;

see, also, *Fay v. Swicker* (1950), 154 Ohio St. 341, 43 O.O. 243, 96 N.E.2d 196, paragraph one of the syllabus; R.C. 3929.27.

{¶ 16} Today, insurance is typically sold to individuals by one of three methods: the exclusive-agency system, the independent-agency or "American Agency" system, and direct selling by employees of the insurer. See Regan, Agent Discretion and the Choice of Insurance Marketing System, 39 J.Law & Econ. at 637–638. Independent agents may sell customers the policies of various insurance companies and typically have a property right in the policyholder information. See *Hedlund v. Farmers Mut. Auto. Ins. Co.* (D.Minn.1956), 139 F.Supp. 535, 537. Direct selling refers to marketing directly by insurance company employees without the use of agents. See Wortham, The Economics of Insurance Classification: The Sound of One Invisible Hand Clapping (1986), 47 Ohio St.L.J. 835, 848.

{¶ 17} The exclusive-agency method shares the characteristics of early insurance dealings under which insurance policies were provided to customers through agents who deal solely with one insurance company. The Agent's Agreement in this case provided, at paragraph four, that agents "will represent [Nationwide] exclusively in the sale and service of insurance." Nationwide did business pursuant to the exclusive-agency system. See *Nationwide Mut. Ins. Co. v. Commr. of Ins.* (1986), 397 Mass. 416, 418, 491 N.E.2d 1061. Thus, under the common law of agency, Nationwide, and not the agents, had an exclusive property right in the policyholder information.

### Intent of the Agent's and Computer Agreements

{¶ 18} As the Ohio Supreme Court has recognized, however, an insurance company and its agent have the authority to supplant, by contract, the common-law rules governing their relationship. See *Fay v. Swicker*, 154 Ohio St. 341, 43 O.O. 243, 96 N.E.2d 196, paragraph two of the syllabus. Nationwide and the agents executed several written agreements that embodied terms further identifying the ownership of the policyholder information, particularly the Agent's Agreement and the Computer Agreement.

{¶ 19} The interpretation of clear, unambiguous contract terms is a question of law particularly appropriate for resolution by summary judgment. Generally courts presume that the intent of the parties to a contract resides in the language they have chosen to employ in the agreement. See *Air Prod. & Chem., Inc. v. Indiana Ins. Co.* (Dec. 23, 1999), 1st Dist. Nos. C–980947 and C–990009, 2000 WL 955600, citing *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146; see, also, *Foster Wheeler*

*Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519.

{¶ 20} If the language in a contract is clear and unambiguous, there is no issue of fact to be determined, and the court cannot create a new contract by finding an intent not expressed in the clear language employed by the parties. A reviewing court must give plain language in an insurance contract its ordinary meaning when ascertaining the intent of the parties. See *Goering v. Choicecare Healthcare Plans, Inc.* (1999), 136 Ohio App.3d 22, 24, 735 N.E.2d 936; see, also, *Miller v. Marrocco* (1986), 28 Ohio St.3d 438, 439, 28 OBR 489, 504 N.E.2d 67. It is "only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning [that] extrinsic evidence [should] be considered in an effort to give effect to the parties' intentions." *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499.

{¶ 21} As the trial court correctly concluded, the language of the Agent's Agreement, by itself, did not conclusively demonstrate Nationwide's ownership of the policyholder information. But the agreement contained provisions that were inconsistent with the agents' assertion that they had a right to the ownership of the policyholder information. The Agent's Agreement provided that the agents were independent contractors working under an exclusive-agency agreement. As in a traditional exclusive-agency arrangement, the agreement provided that "[u]pon cancellation of this Agreement, it is understood that [Nationwide] retain[s] the right to continue to provide insurance services to all of the customers and to continue to solicit such customers for additional business." The Agent's Agreement also contained a one-year noncompetition agreement that would make the agents' ownership of the time-sensitive policyholder information useless. These sections would be meaningless non sequiturs if the agents owned and retained the rights to the policyholder information. See *Kohler v. Nationwide Mut. Ins. Co.* (June 22, 1998), C.A.9 Nos. 97–15807 and 97–15821, 1998 WL 385133.

{¶ 22} The substance of the agents' arguments lies in the interpretation of the Computer Agreement. The agents contend that the trial court erred in concluding that the policyholder information entered into the computer system was the proprietary information of Nationwide, when that conclusion violated principles of contract construction by construing intent in favor of the drafter—Nationwide—that was not expressed in the language of the Computer Agreement. The agents argue that (1) as expressed in the preface, the Computer Agreement purported merely to define the duties relative to the computer system being provided by Nationwide, (2) inconsistencies throughout the document in identifying whether policyholder information, or merely computer software, hardware, and documen-

tation, was included in the "Nationwide System" made a determination of intent impossible, and (3) the Computer Agreement inconsistently referred to the policyholder information as remaining Nationwide's property when the document purported to transfer ownership.

{¶ 23} While hardly a model of clear drafting, the Computer Agreement did contain an explicit statement that policyholder information placed into the system was Nationwide's property. The first sentence of paragraph nine of the Computer Agreement provided that "[a]t all times, the Nationwide System *and policyholder data will remain the property of the Company* * * *." The next sentence stated that the agents agreed not to disclose "any hardware, software, manuals, and related documentation provided by Nationwide, *and all policyholder information, in any form* * * *." The third sentence provided that the agents agreed that the "hardware, software, manuals, *policyholder information* and related documentation * * * are *the property of and proprietary to, Nationwide* * * *." (Emphasis added.)

{¶ 24} In light of these express declarations, we hold that the trial court did not err in concluding that the Computer Agreement identified Nationwide as the owner of the policyholder information. Moreover, the agents acknowledged in the trial court that the agreement transferred ownership to Nationwide. In their original complaint and in their motion for a temporary restraining order seeking to prevent Nationwide from terminating agents for failing to sign the Computer Agreement, the agents acknowledged that they were presented with "a Hobson's Choice. If they sign the Computer Agreement, it * * * shifts the ownership of policyholder names and agent generated information to Nationwide * * *." Both class representatives admitted in their depositions that if they signed the Computer Agreement, they would give up ownership rights to policyholder information. Thus, the unambiguous intent of paragraph nine was to vest ownership of the policyholder information found in the computer system in Nationwide.

### Conveyance and Consideration in the Computer Agreement

{¶ 25} The agents next argue that the trial court erred in entering summary judgment for Nationwide because even if the Computer Agreement purported to identify ownership of policyholder information, it did not contain language that conveyed that ownership to Nationwide. They further assert that any conveyance was not supported by consideration sufficient to make it enforceable in law.

{¶ 26} The agents contend that absent an expressed intent to convey their ownership of the policyholder information, they remained its owners. The statement in paragraph nine that the "policyholder data will remain" Nationwide's property was not, they claim, a statement of conveyance. Because of

inconsistent references to what was included in the definition of the term the "Nationwide System," sometimes including policyholder information, sometimes not, the Computer Agreement did nothing more than protect Nationwide's property rights in the network system.

{¶ 27} Although the language of paragraph nine lacked an explicit statement of conveyance and despite the use of the word "remain" to modify "policyholder data," the Computer Agreement was largely prospective in its scope. The first sentence stated that both the Nationwide System and policyholder data "will be subject to [Nationwide's] privacy policies." Read together, paragraphs one and nine defined "policyholder information" in the context of the "computer system being provided by Nationwide." And, the reference to "remain" was consistent with Nationwide's interpretation of the Computer Agreement as imposing duties upon those of its agents that terminated their employment. Despite these ambiguities, the language clearly indicates that, following the execution of the Computer Agreement, Nationwide would own policyholder data entered into the system.

{¶ 28} We again acknowledge that the agents have previously argued that the Computer Agreement language in fact identified a conveyance of ownership to Nationwide. The depositions of Costanzo and Kallam showed that they understood the language of the Agreement to reflect an intent to convey ownership to Nationwide.

{¶ 29} The agents next argue that any conveyance found in the Computer Agreement was not supported by consideration. A modification to a contract is not binding unless supported by consideration. See *Trader v. People Working Cooperatively* (1994), 104 Ohio App.3d 690, 694, 663 N.E.2d 335. "In Ohio, consideration is either a benefit to the promisor or a detriment to the promisee. * * * The court will find consideration for an agreement 'is sufficient if it be such as *could* be valuable to the party.' *Judy v. Louderman* (1891), 48 Ohio St. 562, 29 N.E. 181, paragraph two of the syllabus * * *. The courts will 'leave the parties to be the sole judges of the benefits to be derived from their contracts, unless the inadequacy of consideration is so gross as of itself to prove fraud or imposition.' [Id.]" *Mack v. Thompson* (Aug. 31, 1994), 1st Dist. No. C–930359, 1994 WL 466505.

{¶ 30} The Ohio Supreme Court has recently held that, in an at-will employment relationship, forbearance by an employer from terminating an employee constitutes consideration for a change in the terms of the employee's at-will employment. See *Lake Land Emp. Group of Akron, L.L.C. v. Columber*, 101 Ohio St.3d 242, 2004-Ohio-786, 804 N.E.2d 27, syllabus. It noted that "[o]ur decision today does no more than recognize that consideration exists where an at-will employer and an at-will employee continue their employment relationship,

rather than terminate it, after the employer imposes a new requirement for employment * * *." Id. at ¶ 22.

{¶ 31} Nationwide undertook to provide its at-will agents with a new computer network including hardware. Nationwide promised to maintain the system. Adoption of the network permitted the agents to remotely access their files and Nationwide's information resources. The agents agreed to pay a $100 monthly service fee and further agreed that policyholder information entered into the system became the property of Nationwide. The agents chose to sign the Computer Agreement and to remain in the employ of Nationwide. Under traditional rules of contract analysis and the rule of *Lake Land*, the Computer Agreement was adequately supported by consideration.

{¶ 32} The agents finally argue that the trial court erred by relying upon the analysis in *Lake Land* and concluding that the Computer Agreement was an enforceable noncompetition agreement. The trial court specifically noted that this "issue [was] not raised by this litigation and might well require individualized assessments not amenable to resolution by this class action complaint for declaratory judgment."

{¶ 33} Thus, the clear language of the Computer Agreement provided that the policyholder information entered into the Nationwide computer system was "the property of and proprietary to" Nationwide. It unambiguously acknowledged the ownership of policyholder information by Nationwide. The assignment of error is overruled.

{¶ 34} Therefore, the judgment of the trial court is affirmed.

Judgment affirmed.

HILDEBRANDT, P.J., concurs.

PAINTER, J., concurs separately.

PAINTER, J., concurring separately.

{¶ 35} I concur in the first part of the opinion and in the result. Under the common law of agency, Nationwide always owned the policyholder information. Nationwide operates through exclusive agents; under that system, all policyholder information is the property of the principal, not the agent.[4]

{¶ 36} But if Nationwide had not already owned the information, it did not receive it as a result of the Computer Agreement. This contract did not transfer

---

4. Freeman & Eggert, Exploration of Policyholder Information Ownership Rights Under the Three Existing Insurance Agency Systems in the United States (2002), 32 W.New Eng.L.Rev. 409, and cases cited there.

anything—it was exclusively concerned with the installation and operation of the computer system.

{¶ 37} Hidden away in Section 9, entitled "Protection and Security" was this: "You also agree that the Nationwide System (hardware, software, manuals, *policyholder information and related documentation*) are [sic] the property of and proprietary to, Nationwide or Nationwide's third party vendors, and further agree to protect the Nationwide System (hardware, software, manuals, and related documentation) or any part thereof, from unauthorized use or disclosure." (Emphasis added.) There were no words of conveyance, and construing the language against the drafter, I would hold that the language meant, at most, that the electronic data stored in the system was Nationwide's property. That would have no bearing at all on the ownership of the underlying information—or on the agent's right to use it.