[Cite as *Harsh v. NHC - Five Points, L.L.C.*, 2025-Ohio-2904.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MARYANNE BURNS HARSH, | : | APPEAL NO. C-240699 |
| | | TRIAL NO. A-2400600 |
| SCOTT B. HARSH, | : | |
| and | : | |
| MARYANNE BURNS HARSH HOLDING TRUST, | : | *JUDGMENT ENTRY* |
| | : | |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| NHC – FIVE POINTS, LLC, | : | |
| NEYER HOLDINGS CORP., | : | |
| EZ 2230, LLC, | : | |
| and | : | |
| THOMAS L. NEYER, JR., | : | |
| Defendants-Appellants. | : | |

This cause was heard upon the appeal, the record, and the briefs.

The judgment of the trial court is affirmed for the reasons set forth in the Opinion filed this date.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs are taxed under App.R. 24.

The court further orders that 1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and 2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 8/15/2025 per order of the court.**


**By:**_____
          **Administrative Judge**

[Cite as *Harsh v. NHC - Five Points, L.L.C.*, 2025-Ohio-2904.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MARYANNE BURNS HARSH, | : | APPEAL NO. C-240699 |
| | | TRIAL NO. A-2400600 |
| SCOTT B. HARSH, | : | |
| and | : | |
| MARYANNE BURNS HARSH HOLDING TRUST, | : | *O P I N I O N* |
| | : | |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| NHC – FIVE POINTS, LLC, | : | |
| NEYER HOLDINGS CORP., | : | |
| EZ 2230, LLC, | : | |
| and | : | |
| THOMAS L. NEYER, JR., | : | |
| Defendants-Appellants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 15, 2025

*Keating Meuthing & Klekamp, PLL, Matthew M. Allen,* and *Corey H. Buschle*, for Plaintiffs-Appellees,

*Dinsmore & Shohl, LLP,* and *H. Toby Schisler*, for Defendants-Appellants.

**Bock, Judge.**

**{¶1}** In these contract disputes, defendants-appellants NHC – Five Points, LLC, ("Five Points") Neyer Holdings Corp. ("NHC"), EZ 2230, LLC, ("EZ 2230") and Thomas L. Neyer, Jr., (collectively, "Neyer parties") challenge the trial court's grant of summary judgment in favor of plaintiffs-appellees Maryanne Burns Harsh, Scott B. Harsh, and Maryanne Burns Harsh Holding Trust (the "Trust") (collectively, "Harsh parties"). In a single assignment of error, the Neyer parties argue that summary judgment was improper because genuine issues of material fact existed regarding notice, mitigation of damages, and the outstanding principal balance amounts.

**{¶2}** We disagree. The record reveals no genuine issues of material fact that would prevent summary judgment. We overrule the Neyer parties' assignment of error and affirm the trial court's judgment.

## I.    *Factual and Procedural History*

**{¶3}** At issue are three relatively straightforward promissory notes memorializing loan agreements entered into by assorted combinations of the parties between 2018 and 2022. The promissory notes were induced, in part, by three separate guaranty agreements signed by Neyer and his businesses.

### A.  *EZ Note and Guaranty*

**{¶4}** In 2018, Burns Harsh and Harsh agreed to lend EZ 2230 $350,000 under a promissory note ("EZ Note") signed by Burns Harsh, Harsh, and Neyer in his capacity as EZ 2230's manager. The EZ Note required EZ 2230 to repay the loan in varying monthly installments until January 31, 2025, when the balance of the unpaid loan, plus any unpaid interest, was due. Under the EZ Note, EZ 2230 could extend that deadline "for two additional one-year periods upon not less than 30 days notice."

**{¶5}** EZ 2230 and Neyer agreed to guarantee the loan ("EZ Guaranty"). Under the EZ Guaranty, Neyer and EZ 2230 "unconditionally guarantee[d] to [Burns Harsh and Harsh] prompt payment and discharge as and when same shall become due of all Principal amounts which are properly obligations of EZ under the [EZ] Note." Neyer, along with EZ 2230, guaranteed full and punctual payment of the $350,000 in the event of a default by EZ 2230 under the EZ Note. The EZ Guaranty stated, "The Obligations of [EZ 2230 and Neyer] shall not be released, discharged, affected, modified or impaired by any event, including, without limitation . . . any other circumstance which might otherwise constitute a legal or equitable discharge or defense of [EZ 2230 or Neyer]."

B. *Five Points Note and Guaranty*

**{¶6}** Burns Harsh and Neyer, in his capacity as manager of Five Points, signed a 2020 promissory note ("Five Points Note") governing a $400,000 loan from Burns Harsh to Five Points. The Five Points Note required Five Points to repay the loan in quarterly installments. The note's balance and unpaid interest were due on March 31, 2023. Five Points could extend that deadline for "two (2) additional one-year periods . . . upon not less than thirty (30) days written notice."

**{¶7}** Neyer guaranteed the Five Points Note ("Five Points Guaranty"). Under the Five Points Guaranty, Neyer "unconditionally" guaranteed prompt payment of any amounts due under the Five Points Note. Further, if Five Points failed to pay, refused to pay, or discharged its obligations under the Five Point Note, Neyer guaranteed repayment of the $400,000. Finally, the Five Points Guaranty provided that Neyer's obligations "shall not be released, discharged, modified or impaired by any event, including, without limitation . . . any other circumstance which might otherwise constitute a legal or equitable discharge or defense of [Neyer]."

C. *NHC Note and Guaranty*

**{¶8}** In 2022, the Trust and NHC entered into a $250,000 revolving credit agreement ("NHC Note"). The NHC Note permitted NCH to draw up to $250,000 in funds from the Trust. The NHC Note required NHC to repay any funds so drawn with seven percent interest. If an unpaid balance existed on September 1, 2023, NHC had to pay the total balance plus accrued unpaid interest. NHC could request "two additional one-year" extensions in writing 90 days before the September 2023 deadline.

**{¶9}** To induce the Trust to execute the NHC Note, NHC and Neyer provided a written guaranty ("NHC Guaranty"). NHC and Neyer "unconditionally guarantee[d] to [the Trust] the prompt payment and discharge as and when same shall become due of all Principal amounts" under the NHC Note. Neyer and NHC's obligations under the NHC Guaranty would "not be released, discharged, affected, modified, or impaired by any event, including, without limitation . . . any other circumstance which might otherwise constitute a legal or equitable discharge or defense of [Neyer and NHC]."

D. *Default and waiver provisions*

**{¶10}** The three Notes contain identical default and waiver provisions:

**Default.** If one or more of the following events shall happen (each as "Event of Default"), the principal and accrued interest of this Note shall automatically and without also notice to Maker become due and payable forthwith and Holder may pursue any and all other rights, remedies, and recourses available to Holder, including, but not limited to, any this or that rights, remedies or recourses at law or in equity.

a. *Payment Default:* If a default occurs in the payment of the principal of this Note, when and the same shall become due and payable, and this or that default continue for a period of thirty (30) days after.

. . .

**Waiver.** Maker, for itself and its successors and assigns, expressly waives presentment, demand, protest, notice of dishonor, notice of nonpayment, notice of maturity, notice of protest, presentment for purpose of accelerating maturity, diligence in collection and the benefit of any insolvency law.

E. *The Harsh parties sued the Neyer parties*

{¶11} In February 2024, the Harsh parties sued Five Points, NHC, and Neyer, asserting that they had defaulted on the Five Points Note, Five Points Guaranty, NHC Note, and NHC Guaranty. In April 2024, the Harsh parties amended the complaint to add a claim against EZ 2230 and Neyer for defaulting on the EZ Note and EZ Guaranty.

{¶12} The Harsh parties moved for summary judgment, arguing that the Neyer parties breached the promissory notes and guaranties, and were liable for the outstanding obligations. The Harsh parties attached an affidavit signed by Burns Harsh, the promissory notes, and the guaranties.

{¶13} Burns Harsh averred that, as of March 31, 2023 (the deadline to pay the remaining balance and interest due under the Five Points Note), the Five Points Note carried a $290,000 outstanding principal balance. Although Five Points had made a partial payment of $15,896 in February 2024, Five Points failed to cure the default within 30 days of March 31, 2023.

{¶14} Turning to NHC, Burns Harsh averred that as of September 1, 2023 (the deadline to pay the balance and interest due under the NHC Note), NHC owed

$250,000. While NHC had made two interest-only payments in February 2024, NHC failed to cure the default within 30 days.

**{¶15}** Finally, Burns Harsh averred that EZ 2230 had not made any payments under the EZ Note for seven months, and as of September 2024, EZ 2230's unpaid principal balance under the EZ note was $100,014.79.

**{¶16}** In response, the Neyer parties argued that genuine issues of material fact precluded summary judgment because there was no evidence that the Harsh parties gave the Neyer parties notice of the defaults, and that Burns Harsh's affidavit failed to include documentary evidence of the unpaid balances.

**{¶17}** The trial court granted the Harsh parties' motion for summary judgment on all counts, awarding damages and interest to the Harsh parties.

## II. *Analysis*

**{¶18}** In a single assignment of error, the Neyer parties argue that genuine issues of material fact exist involving notice, damage mitigation, and the outstanding balances on the loans.

### A. Summary-judgment standard

**{¶19}** We review the trial court's decision to grant summary judgment "de novo, without deference to the trial court's ruling." *Costanzo v. Nationwide Mut. Ins. Co.*, 2005-Ohio-3170, ¶ 11 (1st Dist.).

**{¶20}** Under Civ.R. 56(C), a court should grant summary judgment if, after construing the evidence and stipulations most strongly in the nonmoving party's favor, "there is no genuine issue of material fact and [] the moving party is entitled to judgment as a matter of law." A fact is material "if it affects the outcome of the litigation." *Finn v. Seiser*, 2024-Ohio-5288, ¶ 23 (1st Dist.). Materiality turns on

8

whether "the relevant factual allegations contained in the documentary evidence are in conflict." *Fesman v. Berger*, 1995 Ohio App. LEXIS 5327, *5 (1st Dist. Dec. 6, 1995).

**{¶21}** The party moving for summary judgment carries the initial burden of "informing the trial court of the basis for the party's motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim." *Midland Credit Mgmt., Inc. v. Naber*, 2024-Ohio-1028, ¶ 6 (1st Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

**{¶22}** Once the initial burden is satisfied, the burden shifts to the nonmoving party, which "by affidavit or as otherwise [allowed under Civ.R. 56], must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). When the opposing party fails to respond to a properly made motion for summary judgment "with evidence of the type required by the rule[, that failure] leaves the trial court with no other choice but to grant the motion." *Cook v. Wilson*, 2006-Ohio-234, ¶ 23 (10th Dist.) (affirming a grant of summary judgment where appellant offered no evidence, which left the trial court with no option but to find that appellant breached a purchase agreement and promissory note); *see Helms v. Cahoon*, 2002 Ohio App. LEXIS 102, 7 (9th Dist. Jan. 16, 2022) ("a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").

## B. Promissory notes and guaranties are governed by contract law

**{¶23}** The Harsh parties sued the Neyer parties for breaching the promissory notes and guaranties. As defined by R.C. 1309.102(A)(65), "[a] promissory note is simply an instrument that evidences an agreement to pay a monetary obligation." *Bank of Am., N.A. v. Smith*, 2014-Ohio-2845, ¶ 10 (1st Dist.). And Ohio law views guaranties as contracts in which one party guarantees payments for another person's

or entity's debts. *LB-RPR REO Holdings*, *LLC v. Ranieri*, 2012-Ohio-2865, ¶ 23 (10th Dist.), quoting *Thayer v. Diver*, 2009-Ohio-2053, ¶ 77 (6th Dist.).

**{¶24}** A borrower's or guarantor's failure to make payments under a promissory note or guaranty is "akin to an action for breach of contract." *Smith* at ¶ 10. Summary judgment should be granted on a breach-of-contract claim if no genuine issues of material fact exist and the evidence establishes, as a matter of law, "the existence of a contract, performance by the plaintiff, a breach by the defendant, and resulting damages." *Id.* at ¶ 11.

**{¶25}** We review promissory notes and guaranties under traditional contract-interpretation rules. *Tera, L.L.C. v. Rice Drilling D*, *L.L.C.,* 2024-Ohio-1945, ¶ 11. When reviewing contracts, this court's role is to carry out the parties' intent. *Id.*, quoting *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 2011-Ohio-2720, ¶ 37. We "'examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract.'" *Id.*, quoting *Sunoco* at ¶ 37. Interpreting unambiguous contracts presents "a question of law particularly appropriate for resolution by summary judgment." *Costanzo*, 2005-Ohio-3170, at ¶ 19 (1st Dist.).

## C. Notice and damages mitigation

**{¶26}** The Neyer parties assert that a genuine issue of material fact exists precluding summary judgment involving whether the Harsh parties provided the Neyer parties proper notice of the defaults under the promissory notes and guaranties, depriving the Neyer parties of their ability to cure those defaults. This, the Neyer parties argue, amounts to a genuine dispute regarding the Harsh parties' failure to mitigate damages.

1.  Ohio law requires injured parties to mitigate damages

**{¶27}** The Neyer parties are correct that in breach-of-contract cases, the injured party must mitigate its damages and may not recover any damages that it could have prevented by taking mitigating actions. *First Fin. Bank, N.A. v. Cooper*, 2016-Ohio-3523, ¶ 23 (1st Dist.), quoting *Four Seasons Environmental, Inc. v. Westfield Cos.*, 93 Ohio App.3d 157, 159 (1st Dist. 1994), quoting *F. Ents. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d 154 (1976), paragraph three of the syllabus. This duty is grounded in the principle that "'the damage award should put the injured party in as good a position had the contract not been breached at the least cost to the defaulting party.'" *Four Seasons* at 159, quoting *Kentucky Fried Chicken* at 159-160. But this duty requires reasonable efforts, rather than extraordinary ones. *Aurora Loan Servs. v. Sansom-Jones*, 2012-Ohio-5477, ¶ 25 (10th Dist.). What constitutes reasonable efforts or actions is a question of fact. *Cooper* at ¶ 23.

**{¶28}** Parties, however, may waive any duty to mitigate damages. *CSRA Columbus OH Fitness Master Lessee, LLC v. Fitness & Sports Clubs, LLC*, 2025-Ohio-2645, ¶ 19 (5th Dist.). And Ohio courts have routinely enforced clauses in guaranties waving a guarantor's notice of a default. *See Columbus Countywide Dev. Corp. v. Junior Village of Dublin, Inc.*, 2003-Ohio-5447, ¶ 22 (10th Dist.).

2.  The Neyer parties waived notice and mitigation

**{¶29}** The three promissory notes included express waivers of "demand, . . . notice of dishonor, notice of nonpayment, notice of maturity, [and] diligence in collection." The Neyer parties appear to concede that these provisions waived any duty the Harsh parties had to provide the Neyer parties notice of their defaults under the three promissory notes. Yet, "a guaranty is an independent contract separate from and

collateral to the original contract of the principal." *Altercare of Canal Winchester Post-Acute Rehab. Ctr., Inc. v. Turner,* 2019-Ohio-1011, ¶ 17 (10th Dist.).

**{¶30}** In the three guaranties, the Neyer parties "unconditionally guarantee[d] to [the Harsh parties] the prompt payment and discharge as and when same shall become due of all Principal amounts." Neyer and the other guarantors agreed that their obligations "shall not be released, discharged, affected, modified, or impaired by any event, including, without limitation . . . (ii) the taking or failure to take any action under the Obligations or this Guaranty; . . . (iv) any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a Guarantor."

**{¶31}** First, the guaranties provide that the Neyer parties' obligations are not affected, modified, or discharged by the Harsh parties' failure to act, which includes the Harsh parties' failure to provide the Neyer parties notice of a default.

**{¶32}** Second, the Neyer parties' mitigation argument is an affirmative defense. Under the guaranties, no defense releases, discharges, affects, modifies, or impairs the Neyer parties' obligations. In other words, the guaranties preclude the Neyer parties from raising a lack of notice and mitigation as an affirmative defense.

**{¶33}** Third, "failure to mitigate damages is an affirmative defense, meaning that the burden of proof lies with the breaching party." *Cooper*, 2016-Ohio-3523, at ¶ 23 (1st Dist.). As the breaching parties, the Neyer parties had the burden of producing evidence demonstrating the Harsh parties' lack of reasonable mitigation efforts. And for more than 170 years, Ohio law has held that where a guarantor has not sustained a loss due to lack of notice of a default, the guarantor's obligations are not discharged. *Bashford v. Shaw*, 4 Ohio St. 263, 268-269 (1854). The Neyer parties failed to produce evidence showing the Harsh parties' lack of reasonable efforts or any

prejudice to the Neyer parties stemming from the lack of notice of the defaults on the promissory notes. That failure is fatal to their notice and mitigation arguments.

**{¶34}** In sum, by signing the promissory notes, the Neyer parties waived any issues involving mitigation and notice. They also are precluded from raising these arguments under the text of the guaranties. Finally, the Neyer parties produced no evidence in support of the defense.

### D. Unpaid balances

**{¶35}** Next, the Neyer parties argue that the Harsh parties failed to produce documentary evidence showing loan payments and alleged balances on the loans. That failure, the Neyer parties argue, means that the trial court had to assess Burns Harsh's credibility when it granted summary judgment.

**{¶36}** The Neyer parties are correct that there are no accounting or financial records reflecting the outstanding loan balances in the record. But "[a] party may attach authenticated evidence or affidavits attesting facts otherwise admissible under Civ.R. 56 to support its argument in favor of or against summary judgment." *Pennsylvania Lumbermens Ins. Corp. v. Landmark Elec.*, 110 Ohio App.3d 732, 739 (2d Dist. 1996).

**{¶37}** The Neyer parties are also correct that, where "resolution of [a] factual dispute will depend, at least in part, upon the credibility of the parties or their witnesses, summary judgment . . . is inappropriate." *Wilson v. CSX Transp., Inc.*, 2025-Ohio-819, ¶ 58 (1st Dist.), quoting *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993). But "[c]redibility issues typically arise in summary judgment proceedings when one litigant's statement conflicts with another litigant's statement over a fact to be proved." *Turner* at 341. Credibility issues "also arise when an unambiguous

statement contained in the affidavit of the party moving for summary judgment is controverted by that party's earlier deposition testimony." *Id.*

**{¶38}** Here, the record lacks any prior inconsistent statements by Burns Harsh about the unpaid balances, sworn statements by the Neyer parties, or any evidence whatsoever challenging the statements in Burns Harsh's affidavit. When "the non-moving party fails to respond with evidentiary materials, the affidavit of the moving party is accepted as true." *Lawrence R. Barker Co. v. Overseas Dev. Corp.,* 64 Ohio App.3d 545, 548 (8th Dist. 1989), citing *Stemen v. Shipley*, 11 Ohio App.3d 263, 268 (6th Dist. 1982). Simply put, there is no evidence contradicting anything contained in the Burns Harsh affidavit that would create a genuine issue of material fact about the outstanding balances.

**{¶39}** The Neyer parties did not establish a genuine issue of material fact warranting a reversal of the trial court's summary judgment.

### III.    *Conclusion*

**{¶40}** We overrule the Neyer parties' sole assignment of error and affirm the trial court's summary judgment.

Judgment affirmed.

**ZAYAS, P.J.,** and **MOORE, J.,** concur.