S. A. Ruebel & Co., Appellant, *v.* Morr et al.,
Appellees.

(No. 7794—Decided November 9, 1953.)

*Mr. Sanford A. Headley* and *Mr. Walter K. Sibbald,*
for appellant.
*Mr. C. Watson Hover* and *Mr. Carl B. Rubin,* for
appellees.

Matthews, P. J.   This is an action to recover a bal-
ance due on a contract with the defendants, as the
Board of County Commissioners of Hamilton County.
The issues were submitted to the court without a jury.
There was a finding and judgment for the defendants.
The plaintiff's motion for a new trial was overruled
and thereupon, in due time, this appeal was filed.

On November 23, 1949, the plaintiff entered into a
written agreement with the defendants for "Furnish-
ing the necessary labor and material to improve North
Bend road No. 142 from Colerain avenue west to Vo-
gel road, by grading, constructing a 40-foot concrete
roadway, having concrete curbs integral with the pave-
ment, also necessary drainage structure on North
Bend road and Vogel road, together with construction
of retaining walls, all of which shall be done and per-
formed in accordance with the general conditions,

drawings, surveys, plats, cross-sections, profiles, plans and specifications, including all modifications thereof, if any, incorporated in the documents before their execution and by reference hereby become part of this contract.

"The provision contained in the 'Legal Notice,' in 'Information for Bidders,' and in the 'Specifications' as well as the surveys, plats, cross-sections and profiles for this work on file in the office of the county commissioners are also hereby combined and incorporated by reference thereto as part of this agreement."

The county agreed to pay to the plaintiff for this labor and material "Under the conditions and in the manner provided in the specifications and in full of all compensation—at the unit prices, stated in the proposal, the sum of approximately $118,789.80."

Under the same cover and attached to one another were the "Notice to Contractors," the "Contract," the contractor's "Bond," "Engineer's Estimate," and "Specifications," and various other documents of no importance here.

The "General Construction and Material Specifications for Highways and Sewers" of the city of Cincinnati were not attached or referred to in the main contract document.

The plaintiff's proposal is referred to in the main contract document and it makes the prices therein control the standard of the plaintiff's compensation for the labor and material furnished by it. Upon this basis, the defendants have paid the plaintiff slightly in excess of the estimated amount, but a controversy arose as to whether the plaintiff was entitled to any compensation for labor and material furnished by it in the restoration of the surface of Vogel road. The defendants contended and contend now that the plaintiff

was obliged to make the restoration at its own expense,
or, perhaps, that its compensation therefor was to be
found in the unit prices for the other labor and mate-
rial. It is not disputed that the plaintiff furnished
the labor and materials for the restoration.

The defendants' contention is predicated on the
claim that the "General Construction and Material
Specifications for Highways and Sewers" of the city
of Cincinnati are a part of this contract of the plain-
tiff with the county and that they contain a provision
casting the entire burden of restoration of the surface
of the street, wherein a sewer is laid, upon the con-
tractor.

Counsel for the defendants argued that the city of
Cincinnati was, in effect, a party to this contract, and
they point out that the county specifications attached
to the contract were so modified as to provide that
wherever in the county specifications the phrase,
"Board or City Manager," was used, it would be held
to mean the "Board of County Commissioners of
Hamilton County, Ohio." However, we find only one
other place in the specifications in which the city man-
ager is mentioned. It is our conclusion, therefore,
that the provision is meaningless. We are also of the
opinion that had the city manager been thereafter
mentioned, such mere mention would have been inef-
fective to make the city of Cincinnati a party to this
contract. The city of Cincinnati did not sign the con-
tract. It was a contract between the plaintiff and
Hamilton county within its powers—and with no one
else.

But as we understand the defendants' argument, it
is that regardless of whether the city of Cincinnati
was a party to the contract, the entire volume com-
posed of 294 pages of "General Construction and
Material Specifications" was incorporated in this

county contract by reference. This results, so the argument runs, not from any provision in the main contract document, but from a provision in the county specifications attached to the main document. Let us examine this provision. It is found in the 46th paragraph of the county specifications. It is as follows:

"Specifications. Specifications covering the proposed work shall conform to the city of Cincinnati General Construction and Material Specifications for Highways and Sewers, dated June 1, 1941, and supplements or changes thereto and in accordance with special notes set forth herein."

Reliance is placed entirely upon this provision, found on page 39 of the General Construction and Material Specifications of the city of Cincinnati:

"G-10.15 Restoration of Streets: Where it is necessary for the contractor to open streets which are not to be paved under the contract, he shall first obtain the necessary permits from the Division of Records, room 345 City Hall. The contractors shall exhibit said permits to the engineer before he begins excavation. On such streets, openings shall be made and the pavement shall be restored in strict accordance with the 'Rules and Regulations Governing Openings in Public Ways' adopted by the city manager, and subsequent amendments thereto.

"As soon as openings have been backfilled, the contractor will be required to temporarily restore the surface so that the street is safe for travel. Permanent restoration of the pavement will be made by the Division of Highway Maintenance except that the contractor shall be permitted to make such restoration as is covered by contract items. Inspection of restoration work done by the contractor shall be made by the inspector assigned to the improvement.

"The prices to be charged the contractor for street

restoration work will be those set forth in said 'Rules and Regulations, etc.' The preliminary 'Estimated Amount of Restoration' for sewer improvements is based on the minimum area to be opened and is indicated in the Proposal, but *it is expressly understood and agreed that the contractor shall pay the entire cost of restoration regardless of any variance between the estimated cost and the actual cost.*

"It is further expressly understood and agreed that all restoration charges (including sufficient allowance for any increase over the estimated amount), for the restoration of street paving, sidewalks, and/or other areas opened under permit, have been included in the unit prices bid on the various items in the proposal.

"Before final payment for the work is made, a written release stating that all restoration charges have been paid must be obtained from the Division of Records."

Before taking up the analysis of this section, it should be stated that the plaintiff was employed for the specific purpose of making a trench in Vogel road, laying a sewer in the trench, and then restoring the surface of the street to its former condition. That, it seems to us, would be sufficient authority to proceed with the work, and that no other permit was necessary. As a matter of fact, no permit was obtained and the plaintiff was allowed to proceed. It opened the trench, laid the sewer and restored the street to its former state, to the knowledge of municipal and county engineers, and without any protest.

The provision just quoted is not applicable to this situation. It seems to us it is expressly excluded by the exception that "The contractor shall be permitted to make such restoration as is covered by the contract items."

It is urged that the plaintiff's compensation is to be

found in the unit prices referred to in the next to the last paragraph of the quoted provision. But how could that provision apply to a contract to do the restoration itself? To determine the aggregate price on a unit price basis, two factors are present—the number of units and the price per unit. Reducing the number of units and making a compensating increase in the price per unit would produce the same aggregate. Applied to this situation, the provision would seem to be meaningless.

That the parties recognized the inappropriateness of this provision seems to be indicated by the fact that they cancelled the provision in the county specifications relating to this subject. It was provided thereby that ''The estimated amount of street and sidewalk restoration for this improvement is ($....).'' If the contractor was expected to enhance his unit price to cover the cost of street restoration, it would be important to him to know what that cost would be. Elimination of the provision would seem to indicate that the cost of street restoration was provided for in some other way. The only other way that it could be provided for under the terms of this contract was by applying the unit price to the labor and materials used in the restoration.

Manifestly, the defendants prepared this contract, and, under the familar rule that the terms of a contract must be construed most strongly against the author, we are of the opinion that, even assuming the incorporation of this provision in the contract, it does not control the other provisions and deprive the plaintiff of the compensation provided by them.

The incorporating provision found in the county specifications is that ''Specifications shall conform to the city of Cincinnati—specifications.'' Does that provision bring into the county contract all the pro-

visions contained in the volume issued by the city of Cincinnati? Is this provision that relates to liability only incorporated?

Courts have had occasion to consider the meaning of the word, "Specifications," in many cases. We refer to a few of them. In *Glens Falls Indemnity Co.* v. *American Awning & Tent Co.*, 55 R. I., 284, 180 A., 367, the court held, as stated in the first paragraph of the headnotes in 180 A.:

"Where contract for road construction between contractor and state contained reference to state's manual of specifications for road construction, reference to term 'specifications' *held* to refer to requirements regarding construction details and materials rather than to division relating to legal formalities, and not to incorporate provisions relating to legal formalities into bond executed to state by contractor and his surety which would make surety liable to unpaid materialmen."

In *Ingersoll-Rand Co.* v. *United States Fidelity & Guaranty Co.*, 92 N. J. Law, 403, 105 A., 236, the question was whether a provision in a sales contract, reserving title in the vendor until paid, found in specifications referred to and attached to the contract was a part of the contract. The court held it was not. At page 405, the court said:

"The word 'specifications,' when used in such a contract, ordinarily means a specific and detailed description of the thing to be furnished or the work to be done. The specifications in question were of that character. True they concluded with the statement that the title and right of possession to the compressor 'remain in the *Rand Drill Co.* until the compressor has been fully paid for in cash.' But that is not a 'specification' within the meaning of the term."

We quote the first paragraph of the headnotes to

*State Bank of Freeport* v. *Cape Girardeau & Chester Rd. Co.,* 172 Mo. App., 662, in 155 S. W., 1111, as sufficient to indicate its applicability to the case at bar:

"A motor car company's offer to sell a car to defendant was accompanied by a separate list of specifications designating the details of the construction of the car, and by reference to its letter to defendant it guaranteed renewal of every part of the mechanism on the car which proved defective during the first year of service, and it also sold a second car to defendant by an instrument providing that the car was 'to be built in accordance with specifications heretofore agreed upon.' *Held*, that the word, 'specifications,' as used in the last contract, was not intended to include all the terms and conditions specified in the first contract, including the guaranty, but referred only to the separate list of particulars respecting the construction of the first car by which the second car was to be built, so that there was no warranty as to the second car."

We are of the opinion that the reference to the city of Cincinnati specifications must be held to mean only those provisions contained in the book descriptive of the materials and work to be done, and did not bring into the county contract any provision purporting to impose or release liability.

For these reasons, the judgment is reversed, and final judgment is entered for the plaintiff.

*Judgment reversed.*

Ross and HILDEBRANT, JJ., concur.