DECISION. *Page 2 
{¶ 1} Raising a single assignment of error, plaintiff-appellant Physicians Anesthesia Services, Inc. ("PAS"), a group of practicing anesthesiologists, contests the entry of summary judgment for defendant-appellee Heather A. Burt, a certified registered-nurse anesthetist ("CRNA"), on its claims for breach of contract and unjust enrichment. PAS had agreed to pay for Burt's advanced anesthesia training in exchange for her future employment with PAS. The contract provided for Burt's repayment of the unforgiven principal and interest, plus liquidated damages, if she did not complete three year's employment with PAS after her training. Because the trial court erred in invalidating the contract's liquidated-damage provision, and because a small portion of the interest due to PAS remained unpaid, the trial court's judgment must be reversed.
 The Student Nurse Anesthetist Agreement {¶ 2} On September 6, 2002, PAS provided Burt, then a registered nurse, with a lump-sum student-support loan in the amount of $33,573.09 in exchange for her promise to work for PAS for three years following her graduation from the Masters Nurse Anesthetist program at the University of Cincinnati.
 {¶ 3} Section XI of the agreement governed repayment of the loan in the event that Burt resigned from PAS employment before the completion of the three-year period. It provided that "[i]n the event [Burt] resigns anytime during the first three years of employment with PAS, for any reason other than illness, disability or death, the balance of the student support loan not forgiven shall become immediately due and [Burt] shall owe the balance to PAS plus interest calculated at 8% plus prime rate as it existed on the date of the lump sum student support loan payment made to [Burt]." *Page 3 
 {¶ 4} The next sentence of Section XI identified Burt's obligation to pay liquidated damages: "[Burt] shall also owe PAS an additional 50% of the amount remaining as liquidated damages to compensate PAS for the loss of her services, the expense of holding a position for [Burt], the expense of recruiting another [student nurse anesthetist] or CRNA to fill the position, and expense of utilization of [a temporary replacement] CRNA until such time as another CRNA is hired to fill position left vacant by [Burt's] resignation. Payment shall be due within 5 days at PAS office."
 {¶ 5} On December 2, 2004, approximately two-thirds of the way through her required tenure with PAS, Burt, then an accredited CRNA, submitted her resignation to PAS. Burt had accepted a CRNA position in Northern California. Her last day of employment with PAS was February 11, 2005 — the date of breach. When Burt left PAS, the unforgiven balance of the loan was $11,191.03.
 {¶ 6} Burt instructed PAS to apply $11,500 in previous settlement monies and her $1,000 Christmas bonus to the loan balance. Burt had overpaid the principal balance by $1,308.97. The excess payment was applied to Burt's interest obligation. Two months before she left, Burt had also requested an accounting from PAS of her remaining obligations under the contract. Seven months later, in July 2005, PAS replied and demanded $3,265.03 in interest and $5,595.52 in liquidated damages due through August 1, 2005. Burt protested the lateness of PAS's response to her request for an accounting and contested the additional amounts due.
 {¶ 7} In January 2006, PAS brought suit for the unpaid amounts. Burt moved for summary judgment, asserting that she had repaid the principal and interest due on her student loan and PAS was therefore not entitled to the interest it claimed in the complaint, and that the liquidated-damage provision of the contract was an unenforceable penalty *Page 4 
under Ohio law. No genuine issue of fact remained to be determined, she claimed, and she was entitled to judgment as a matter of law.
 {¶ 8} In its four-page written decision, the trial court stated that Burt had repaid the unforgiven balance of the loan and the applicable interest due from the date of breach, except for $117.89 in unpaid interest charges. It also ruled that the liquidated-damage provision was an unenforceable penalty. Therefore, PAS was not entitled to the additional interest or damages it claimed. The court entered judgment for Burt despite its conclusion that Burt still owed $117.89 in unpaid interest charges to PAS.
 The Standard of Review {¶ 9} Because summary judgment presents only questions of law, an appellate court reviews the entry of summary judgment de novo, without deference to the trial court's determinations.[1] Summary judgment is proper pursuant to Civ.R. 56(C) when (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence viewed most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.[2]
 {¶ 10} "The interpretation of clear, unambiguous contract terms is a question of law particularly appropriate for resolution by summary judgment."[3] Courts presume that the intent of the parties to a contract resides in the language they have chosen to employ in *Page 5 
the agreement.[4] A reviewing court must give plain language in a contract its ordinary meaning when ascertaining the intent of the parties.[5] If the language in a contract is clear and unambiguous, there is no issue of fact to be determined.
 Simple Interest Due from the Date of Breach {¶ 11} PAS first argues that the trial court erred in determining the date from which the interest payment would accrue under Section XI. The first sentence of Section XI states, inter alia, that Burt owed the unforgiven balance of the student loan to PAS "plus interest calculated at 8% plus prime rate as it existed on the date of the lump sum studentsupport loan payment."[6] The trial court interpreted this language to require Burt to pay simple interest in the amount of 12.75% on the amount of the unforgiven principal due on the date she breached the contract. It is undisputed that the prime rate on September 6, 2002, was 4.75%. Thus the interest rate would have been 8% plus 4.75%, or 12.75%.
 {¶ 12} PAS, however, argues that the language of Section XI mandates that the 12.75% interest payment would accrue from September 6, 2002 — the day the contract was executed and the lump-sum payment was made to Burt. In the alternative, PAS argues that the contract language created an ambiguity that prevented the entry of summary judgment for Burt.
 {¶ 13} But the plain meaning of the text of Section XI supports the trial court's conclusion. It is undisputed that the balance due upon Burt's breach was the amount of the student-support loan not forgiven at the time of breach. The clause "as it existed on *Page 6 
the date of the lump sum student support loan payment" cannot reasonably be construed to specify the date the interest began to accrue. The "it" referred to in the clause was the prime interest rate. Thus the lump-sum-payment date merely defined the applicable prime rate; it did not define when the interest began to accrue. Elsewhere in the contract, PAS provided language that the amount of repayment would be "based upon the date of payment." But the absence of that language from Section XI strengthens the conclusion that the interest accrual was not to be based upon the date of payment but rather upon the date of Burt's breach — the date from which the unforgiven balance was to be calculated.
 {¶ 14} Thus, as a matter of law, Burt owed PAS interest accrued from the date of breach. The trial court reviewed the evidence and calculated that Burt had repaid the unforgiven loan balance plus all the interest due except for $117.89. Nonetheless, the trial court entered judgment for Burt. If interest payments remained unpaid, Burt was not entitled to judgment as a matter of law.
 An Enforceable Liquidated-Damage Provision {¶ 15} PAS next argues that the trial court erred in concluding that the liquidated-damage provision of Section XI was an unenforceable penalty. The trial court determined that the provision served only to deter Burt from breaching the contract. In justifying its view, the trial court also noted, "PAS does not allege that it suffered any actual damages as a result of Ms. Burt's leaving."
 {¶ 16} When a party challenges a liquidated-damage provision, the court must "step back and examine it in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach. "[7] The *Page 7 
Supreme Court of Ohio has established a three-part test to determine the validity of a liquidated-damage clause. Where the parties have agreed upon an amount of damages in unambiguous terms, that amount is to be treated as liquidated damages and not as a penalty if (1) the actual damages would be uncertain in amount and difficult to prove; (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to indicate that it does not express the true intentions of the parties; and (3) the contract is consistent with the conclusion that the parties intended that damages in the agreed-upon amount would follow the breach of the contract.[8]
 {¶ 17} The evidence here indicated that any actual damages would be uncertain and difficult to prove. In opposition to Burt's motion for summary judgment, PAS offered the affidavit of its vice president, Alfonso Lopez, M.D. Dr. Lopez stated that the shortage of CRNAs had forced PAS and other practice groups to enter into multi-year agreements to sponsor the education of students seeking to become CRNAs in exchange for their future employment. The costs of replacing any nurse who breached such an agreement depended on market conditions at the time of breach and the availability of temporary replacement nurses. The CRNA shortage had made it difficult to obtain a replacement for breaching nurses on short notice. In the event of a breach, PAS would be forced to expend a significant but undeterminable amount of time and resources to seek out replacement CRNAs, to shift work schedules, and to locate temporary replacements hired at costs of 150% to 200% of a permanent CRNA employee's salary.
 {¶ 18} The contract was not otherwise unreasonable or unconscionable. The evidence indicated that Burt was a sophisticated party who had entered into the contract with knowledge of the liquidated-damage provision. Burt, an experienced nurse, had *Page 8 
entered into and then breached a previous contract with a nearly identical liquidated-damage provision. PAS had assisted Burt in satisfying a 50%-of-the-principal-balance damages provision when she breached her contract with Anesthesia Group Practice, Inc., to join PAS. Just as in her previous contract, the agreement between PAS and Burt clearly evinced the parties' intention that the damage provision would be enforced upon a breach of the agreement.
 {¶ 19} A Tennessee court of appeals has recently upheld the validity of liquidated-damage provisions in CRNA contracts similar to the one at issue here.[9] In Anesthesia Med. Group, P.C. v. Chandler, the court reversed the entry of summary judgment for a student CRNA. While noting the absence of proof of actual damages, the court based its ruling upon the employer's evidence demonstrating a serious shortage of and a high demand for CRNAs, as well as the significant expenses incurred to hire both permanent and temporary replacements.
 {¶ 20} Like the Tennessee court, this court has held that "[i]f a liquidated-damages clause is otherwise valid, the party seeking such damages need not prove that actual damages resulted from a breach."[10] Here, viewed from the time of the execution of the contract, the damages provision contemplated that if Burt failed to complete her three-year employment commitment, PAS would suffer foreseeable damages because of the significant costs involved in finding temporary and permanent replacements to cover her duties. It would have been difficult to estimate the actual amount of damages that PAS would suffer at the time of contract formation because of the unpredictable market rates *Page 9 
in effect at the time of the breach. Thus the amount of liquidated damages specified in the contract — 50% of the remaining balance — was reasonably related to the amount of time remaining in Burt's employment obligation and was a reasonable prediction of the amount of potential damages to PAS.
 Conclusion {¶ 21} Therefore, we sustain PAS's assignment of error. While the trial court correctly determined that interest payments began to accrue on the date of breach, it erred in entering judgment for Burt when $117.89 in interest remained to be paid to PAS for breach of the contract of employment. The trial court also erred in invalidating the liquidated-damage provision of the contract. Since Civ.R. 56 does not authorize courts to enter summary judgment in favor of a non-moving party, the trial court's judgment is reversed, and this case must be remanded for further proceedings consistent with law and this decision.[11]
Judgment reversed and cause remanded.
SUNDERMANN, P. J., HENDON and CUNNINGHAM, JJ.
[1] See Polen v. Baker, 92 Ohio St.3d 563, 564-565, 2001-Ohio-1286,752 N.E.2d 258.
[2] See, also, Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107,662 N.E.2d 264.
[3] Costanzo v. Nationwide Mut. Ins. Co., 161 Ohio App.3d 759,2005-Ohio-3170, 832 N.E.2d 71, at ¶ 19; see, also, Inland RefuseTransfer Co. v. Browning-Ferris Indus. of Ohio, Inc. (1984),15 Ohio St.3d 321, 322, 474 N.E.2d 271.
[4] See Air Prods. Chems., Inc. v. Indiana Ins. Co. (Dec. 23, 1999), 1st Dist. Nos. C-980947 and C-990009, citing Alexander v. Buckeye PipeLine Co. (1978), 53 Ohio St.2d 241, 374 N.E.2d 146; see, also,Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention FacilitiesAuth., 78 Ohio St.3d 353, 361, 1997-Ohio-202, 678 N.E.2d 519.
[5] See Goering v. Choicecare Healthcare Plans, Inc. (1999),136 Ohio App.3d 22, 24, 735 N.E.2d 936; see, also, Miller v. Marrocco (1986),28 Ohio St.3d 438, 439, 504 N.E.2d 67.
[6] Emphasis added.
[7] Lake Ridge Academy v. Carney (1993), 66 Ohio St.3d 376, 382,613 N.E.2d 183.
[8] See Samson Sales, Inc. v. Honeywell, Inc. (1984),12 Ohio St.3d 27, 465 N.E.2d 392, syllabus.
[9] See Anesthesia Med. Group, P.C. v. Buras (Sept. 25, 2006), Tenn.App. No. M2004-01599-COA-R3-CV; see, also, Anesthesia Med. Group,P.C. v. Chandler (Feb. 6, 2007), Tenn.App. No. M2005-00034-COA-R3-CV.
[10] Sec. Fence Group, Inc. v. Cincinnati, 1st Dist. No. C-020827,2003-Ohio-5263, at ¶ 8, discretionary appeal not allowed,101 Ohio St.3d 1467, 2004-Ohio-819, 804 N.E.2d 41, citing USS Great Lakes Fleet,Inc. v. Spitzer Great Lakes, Ltd. (1993), 85 Ohio App.3d 737, 741,621 N.E.2d 461.
[11] Marshall v. Aaron (1984), 15 Ohio St.3d 48, 472 N.E.2d 335, syllabus; c.f. Celotex Corp. v. Catrett (1986), 477 U.S. 317, 326, 106 S.Ct. 2548 (federal district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the losing party has been given the notice required under Fed.R.Civ.P. 56 to marshal evidence to show a genuine issue of material fact). *Page 1