[Cite as *Jurgensen Co. v. Fairborn*, 2015-Ohio-5478.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| JOHN R. JURGENSEN COMPANY, | : | APPEAL NO. C-140556 |
| | | TRIAL NO. A-0800003 |
| Plaintiff-Appellant, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| CITY OF FAIRBORN, OHIO, | : | |
| | | |
| Defendant-Appellee. | : | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 30, 2015


*Frantz Ward LLP, Andrew J. Natale* and *Nora E. Loftus,* for Plaintiff-Appellant,

*Williams & Petro Co. LLC, John P. Petro* and *Susan S. R. Petro*, for Defendant-Appellee.


Please note: this case has been removed from the accelerated calendar.

**CUNNINGHAM, Presiding Judge.**

{¶1}     Plaintiff-appellant, the John R. Jurgensen Company, appeals from the trial court's entry denying it summary judgment on its claims that defendant-appellee, the City of Fairborn, Ohio, had breached its road-improvement contract when it refused to pay Jurgensen an asphalt-binder price adjustment found in an Ohio Department of Transportation ("ODOT") construction and material specification.  Because the parties' agreement did not incorporate the asphalt-binder price adjustment and did not modify the express pricing and payment terms found elsewhere in the contract documents, we affirm the trial court's judgment.

{¶2}     In 2006, Fairborn sought bids for improvements to a number of its streets.  It issued a proposal including 65 tasks for completion in what became known as the 2006 Street Program, Project Nos. 2502, 2601, 5104, and 5109.  In April 2006, Jurgensen became the successful bidder.  Its $1,106,881.80 bid was based in part on the general and project specifications and the bid and contract forms ("the contract documents") that Fairborn had made available to each bidder.  The contract documents included Fairborn Construction and Material Specification Item 400 which provided specific guidance on how some of the project tasks were to be performed.  Because of the highly detailed nature of many construction specifications, the contract documents, including Fairborn Item 400, incorporated by reference the construction and material specifications promulgated by ODOT and required bidding contractors like Jurgensen to comply with them.  The 2005 ODOT Construction and Material Specifications were in effect at the time of bidding.

{¶3}     The price of asphalt is based largely on the price of oil, which can fluctuate widely.  Many road contracts include an "asphalt binder price adjustment" to address this issue.  Although the contract documents for Fairborn's road-improvement project did not include any specific reference to it, Jurgensen believed that the parties' agreement included an asphalt-binder price adjustment as found in

ODOT Item 401.20. That provision required a project owner to equably adjust the contract price and pay the contractor for any increase in the price of asphalt between the time of its successful bid and the time that the asphalt is purchased and the work is performed. ODOT Item 401.20 provided detailed instructions for measuring and calculating any price adjustment.

{¶4} Jurgensen performed the asphalt work from August through November 2006. During the time between bidding and completion of the work, the price of asphalt increased significantly. At the completion of the project, Jurgensen submitted claims to Fairborn for additional compensation to reflect an asphalt-binder price adjustment of $92,395.66.

{¶5} Fairborn refused to pay the adjustment. Fairborn also refused to release interest earned on the amounts retained from progress payments made to Jurgensen. *See* R.C. Chapter 153. Jurgensen brought suit seeking money damages and a declaration that Fairborn's refusal to pay the asphalt-binder price adjustment and to pay interest had breached its duties under the contract documents.

{¶6} Fairborn answered and raised a counterclaim seeking $2,000 due for damage to a catch basin, along with a declaration that the price described in the winning bid—$1,106,881.80—was all the compensation due to Jurgensen.

{¶7} In December 2008, Jurgensen moved for summary judgment on its claims based on the affidavits of Peter W. Flora, its Dayton Division manager, and the contract documents. Fairborn also moved for summary judgment on all of Jurgensen's claims. Fairborn's motion was supported by the affidavits of Michael A. Mayer, Fairborn's city solicitor, and the attached documents.

{¶8} The trial court heard the arguments of counsel. On June 18, 2013, it journalized an entry denying Jurgensen's motion for summary judgment on its breach-of-contract claims relating to the asphalt-binder price adjustment and granted Fairborn's summary-judgment motion on those claims. The trial court

denied Fairborn's summary-judgment motion on Jurgensen's retained-interest claim.

{¶9} The trial court then scheduled a trial date to resolve the remaining issues. Prior to trial, Jurgensen and Fairborn reached an agreement to dismiss Jurgensen's interest claim and Fairborn's property-damage counterclaim, and the parties submitted a proposed consent entry to the court. The trial court approved the entry. It journalized the entry on September 10, 2014, rendering its earlier summary-judgment ruling final and appealable. Jurgensen appealed.

{¶10} In two interrelated assignments of error, Jurgensen now asserts that the trial court erred in denying its motion for summary judgment and in granting, in part, Fairborn's motion for summary judgment. Civ.R. 56(A) makes summary judgment available to a party like Jurgensen, seeking to recover upon its own claim. *See Capital Fin. Credit, LLC v. Mays*, 191 Ohio App.3d 56, 2010-Ohio-4423, 944 N.E.2d 1184, ¶ 4 (1st Dist.). A party moving for summary judgment bears the burden of establishing that (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to summary judgment as a matter of law, and (3) it appears from the evidence, when viewed in a light most favorable to the nonmoving party, that reasonable minds can only come to a conclusion adverse to that party. *See* Civ.R. 56.

{¶11} The interpretation of clear, unambiguous contract terms is a question of law particularly appropriate for resolution by summary judgment. *See Costanzo v. Nationwide Mut. Ins. Co.*, 161 Ohio App.3d 759, 2005-Ohio-3170, 832 N.E.2d 71, ¶ 19 (1st Dist.). If the language in a contract is clear and unambiguous, there is no issue of fact to be determined. *See Physicians Anesthesia Serv. v. Burt*, 1st Dist. Hamilton No. C-060761, 2007-Ohio-6871, ¶ 10. An appellate court reviews the trial court's summary-judgment rulings de novo. *See Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

{¶12} Here, neither Jurgensen nor Fairborn has asserted that genuine issues of material fact remained for resolution. Both moved for summary judgment as a matter of law on Jurgensen's claims. We have previously questioned the wisdom of resolving declaratory-judgment actions by summary judgment. But the parties' election to address the issues by cross-motions for summary judgment demonstrates that both sides believed that there was no genuine issue of material fact in dispute, and that the court was free to render a decision as a matter of law. *E.g., Cincinnati v. Ohio Council 8, Am. Fedn. of State, Cty. & Mun. Emps., AFL-CIO*, 93 Ohio App.3d 162, 164, 638 N.E.2d 94 (1st Dist.1994).

{¶13} To prevail on its claims, Jurgensen would have to establish the existence of a contract, performance on its part, breach of a duty by Fairborn, and its own damage or loss. *See Brunsman v. W. Hills Country Club*, 151 Ohio App.3d 718, 2003-Ohio-891, 785 N.E.2d 794, ¶ 11 (1st Dist.).

{¶14} The touchstone of contract interpretation is to give effect to the intent of the parties as evidenced by the actual language of the contract. *See Transtar Elec. v. A.E.M. Elec. Servs. Corp.,* 140 Ohio St.3d 193, 2014-Ohio-3095, 16 N.E.3d 645, ¶ 9, citing *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. We must apply clear and unambiguous contract provisions without regard to the relative advantages gained or hardships suffered by the parties. *See Hope Academy. Broadway Campus v. White Hat Mgmt., L.L.C.*, Slip Op. No. 2015-Ohio-3716, ¶ 36, citing *Dugan & Meyers Constr. Co., Inc. v. Ohio Dept. of Adm. Servs.*, 113 Ohio St.3d 226, 2007-Ohio-1687, 864 N.E.2d 68, ¶ 29.

{¶15} Both parties maintain that the contract documents are clear and unambiguous. *See Burt*, 1st Dist. Hamilton No. C-060761, 2007-Ohio-6871, at ¶ 10. Jurgensen, however, argues that Fairborn breached the agreement when it refused to pay the asphalt-binder price adjustment. Jurgensen maintains that the contract documents' reference to ODOT Item 401 incorporated the asphalt-binder price

adjustment described in ODOT Item 401.20, that Fairborn's own provisions did not modify the asphalt-binder price adjustment, and that Jurgensen reasonably understood that, as was the custom in its trade, the contract included an implied term for price adjustment when it submitted its bid and signed the contract.

{¶16}   In response, Fairborn argues that the parties' contract documents did not incorporate the asphalt-binder price adjustment.  Fairborn argues that those ODOT items referred to by the contract documents merely established specifications for the work to be performed and did not modify the express pricing and payment terms found elsewhere in the contract documents.

{¶17}   ODOT Item 401.20—the asphalt-binder price adjustment—is not referenced in any of the contract documents.  The first page of Fairborn's General Provisions states that the "specifications for this project shall conform to the City of Fairborn Construction and Material Specifications and Standard Drawings * * *." But if the Fairborn specifications "do not cover a particular item, the latest edition of the Construction and Material Specifications as published by the Ohio Department of Transportation shall have precedence."  Jurgensen argues that since Fairborn's construction and material specifications did not provide for an asphalt-binder price adjustment, every provision in ODOT Item 401, including the asphalt-binder price adjustment, "shall have precedence" and thus apply to the project.

{¶18}   More specifically, in Fairborn's proposal seeking bidders, seven of the 65 project tasks identified specifications for the work by reference to ODOT Item 448 and to Fairborn Item 400.  Jurgensen's approved bid schedule quoted prices pursuant to these tasks.  Jurgensen contends that because Fairborn's own construction specifications referenced ODOT Item 401, each provision of that item was incorporated into the parties' agreement, including the asphalt-binder price adjustment.

{¶19}   But closer scrutiny of those portions of Fairborn Item 400 referencing ODOT Item 401 reveals that they provide only a description of the manner in which the project items are to be performed.  *See S. A. Ruebel & Co. v. Morr*, 95 Ohio App. 433, 439, 120 N.E.2d 605 (1st Dist.1953) (defining the term "specification," as used in road-improvement contracts, as a specific and detailed description of the thing to be furnished or the work to be done); *see also Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.*, 73 Ohio St.3d 590, 600, 653 N.E.2d 646 (1995).

{¶20}   Fairborn Item 400 references ODOT specifications for the construction of "asphalt concrete surface course[s] placed on an asphalt concrete leveling course and/or intermediate course[s] as specified herein."   The item identifies which ODOT specifications apply to the construction and provides as follows:

> *Plant mix bituminous pavements* shall meet the requirements of *ODOT Item 401*, Asphalt Concrete Pavements – General; *Asphalt Concrete Mixing Plants* shall meet the requirements of *ODOT Item 401* and the asphalt concrete surface and *[I]ntermediate courses* shall meet the requirements of ODOT Item 448, Type 1 or 2, PG 64-22, of the latest edition of the Ohio Department of Transportation 'Construction and Material Specifications.'

(Emphasis added.)

{¶21}   Other sections of Fairborn Item 400 direct that "bituminous plant mixtures" should only be placed under dry and temperate conditions.  The references to ODOT Item 401 are made solely in the context of how bituminous mix and asphalt concrete pavements are to be prepared and used.  These provisions describe how the work is to be performed and make no mention of payment adjustments.   The language of Fairborn Item 400 clearly references Jurgensen's contractual obligation

to satisfactorily complete asphalt concrete paving in accordance with ODOT material specifications. It does not establish a right of Jurgensen to receive escalating prices for materials.

{¶22} Moreover, there are no references at all to ODOT Item 401 in the payment terms separately identified in Fairborn Item 400. Section 4(A), titled "PAYMENT," provides,

> The quantities, measured as provided above, will be paid for at the contract price for each of the particular pay items listed below that are *shown in the bid schedule*, which price and payment shall be full compensation for furnishing all material and for all labor, equipment, tools and incidentals necessary to complete the item.

(Emphasis added.)

{¶23} The bid-schedule price was $1,106,881.80. Thus, by its express terms, Fairborn's Item 400 mandates only that asphalt plants, bituminous mixes, and intermediate courses employed in the project comply with the material specifications of ODOT Items 401, 402, and 448. It imposed no duty on Fairborn, and no part of Item 400 subjected Fairborn to any obligation to pay a price adjustment.

{¶24} Nowhere else in the contract documents is there any express incorporation of any ODOT item establishing Fairborn's obligation to pay the asphalt-binder price adjustment. For example, Jurgensen's bid proposal, signed by its vice president, does not state that its proposed prices relied upon the existence of the price adjustment. Instead, its bid states that Jurgensen would "accept from [Fairborn] as full payment for the completion of each specified item and any required maintenance thereof as hereinafter provided, the price quoted for each item of work completed."

8

{¶25} Payment terms identified in express contract provisions prevail over general statements regarding the use of gap-filling specifications found elsewhere in the document terms. *See Marusa v. Erie Ins. Co.*, 136 Ohio St.3d 118, 2013-Ohio-1957, 991 N.E.2d 232, ¶ 14; *see also Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 175, 517 N.E.2d 559 (8th Dist.1986). The fact that the referenced ODOT items were "important to the proper construction of asphalt pavements" in no way subjected Fairborn to cost-allocation terms where the contract documents elsewhere made express provision for prices and payment.

{¶26} But even if we were to agree that ODOT Item 401.20 had been incorporated into the parties' contract, Jurgensen could not prevail. The clear and unambiguous text of Item 401.20 does not impose any duty upon Fairborn to pay a price adjustment. Item 401.20 provides simply that "[a]ny contract item specifying asphalt concrete *is eligible for* a price adjustment, if the Department's asphalt binder index shows the price for asphalt binders has increased or decreased in excess of 5 percent and the adjustment is more than $100 for any individual item." (Emphasis added.)

{¶27} Each of the seven remaining paragraphs of the item describes the manner in which the adjustment is to be computed. The item imposes obligations only on "the [Ohio] Department [of Transportation]." The term "Contractor" appears only once in the remaining text. Nowhere in the item is any obligation imposed on an "Owner," in general, or Fairborn, in particular.

{¶28} Where contract language states simply that a "contract item * * * is eligible" for a price adjustment, additional language imposing an obligation on the contracting authority to pay the adjustment is required to modify otherwise express and unambiguous payment terms and to make the item enforceable. *See Morr*, 95 Ohio App. at 440, 120 N.E.2d 605. In the absence of an express modification of the

payment terms of the contract, Fairborn was obligated to pay only the full amount of Jurgensen's accepted bid price.

{¶29} Finally, Jurgensen maintains that under the "usage of trade" doctrine, the asphalt-binder price adjustment was effectively made part of the contract terms. Through its Dayton Division managers' affidavits, Jurgensen argues that it understood the asphalt-binder price adjustment to be part of the contract because, in its prior work, when a public entity employed ODOT specifications for asphalt items, the public entity had honored requests for price adjustments. The express terms of a contract generally prevail over custom or "usage of trade," a practice or method of dealing so regularly observed as to justify an expectation that it will be observed in the transaction in question. *See Camargo Cadillac Co. v. Garfield Ent., Inc.*, 3 Ohio App.3d 435, 445 N.E.2d 1141 (1st Dist.1982). But evidence of a usage of trade existing at the time of contract may be employed to clarify disputed contract language only if each party knows or has reason to know of the usage. *E.g., Dana Partners, LLC v. Koivisto Constructors & Erectors, Inc.*, 11th Dist. Trumbull No. 2011-T-0029, 2012-Ohio-6294, ¶ 27. The existence and scope of a usage of trade generally presents a factual issue. *See, e.g.,* R.C. 1301.303. Jurgensen acknowledges that it did not, by the means identified in Civ.R. 56, introduce evidence of the terms of its other contracts, or of Fairborn's knowledge of these dealings with other entities.

{¶30} Here, from the evidence before the trial court, when construed most strongly in favor of Jurgensen, we conclude from the clear and unambiguous language of the contract documents that Fairborn had no duty to pay the asphalt-binder price adjustment, and therefore, it did not breach a contracted-for duty when it refused to pay the adjustment. The first and second assignments of error are overruled.

{¶31} The trial court's judgment is affirmed.

Judgment affirmed.

**FISCHER** and **STAUTBERG, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

